FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2006 SEP 25 AM 10: 19

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

NICOLAS RAMOS-BARRIENTOS, ANSELMO )
HERNANDEZ-MARTINEZ, JORGE HERNANDEZ- )
ANTONIO, and GREGORIO PONCE-HERNANDEZ, )
CATALINO HERNANDEZ-RUBIO, on behalf )
of themselves and all other similarly )
situated persons, )
           )
                 Plaintiff, )
           )
v. )
           )
DELBERT C. BLAND, BLAND FARMS, LLC, )
BLAND FARMS I, LLC, BLAND FARMS, INC., )
BLAND FARMS SALES, LTD., BLAND PACKING )
COMPANY, INTERNATIONAL LABOR MANAGE- )
MENT CORPORATION, MANPOWER OF THE )
AMERICAS, and CONSULAR SERVICES )
INTERNATIONAL, )
           )
               Defendants. )
           )

COMPLAINT-CLASS ACTION

CIVIL ACTION NO.:

**CV606-089**

I.    PRELIMINARY STATEMENT

       1.    Plaintiffs Nicolas Ramos-Barrientos, Anselmo Hernandez-

Martinez, Jorge Hernandez-Antonio, Gregorio Ponce-Hernandez, AND

Catalino Hernandez-Rubio ("the Hernandez plaintiffs") bring this

action as a collective action under 29 U.S.C. §216(b) of the Fair

Labor Standards Act ("FLSA"), and as a class action under the

common law of contracts.  The Hernandez plaintiffs bring this

action as H2A temporary worker who were jointly and severally

employed by defendants to perform agricultural labor in and around

Tattnall and/or Toombs County, Georgia in one or more years

beginning no later than in or about September 2003.

       2.    The defendants consist of those Georgia agricultural

employers, Delbert C. Bland, the companies that he owns, controls,

and operates on a day-to-day basis, Bland Farms, LLC, Bland Farms I, LLC, Bland Farms, Inc., Bland Farms Sales, Ltd., and Bland Packing Company (the "Bland defendants"), and the entities, International Labor Management Corporation ("ILMC"), Manpower of the Americas ("MOA"), and Consular Services International ("CSI"), that the Bland defendants used to recruit, hire, and transport the Hernandez plaintiffs and hundreds of other Mexican nationals when the Bland defendants, ILMC, MOA, and CSI jointly or severally employed the Hernandez plaintiffs and the classes of workers that the Hernandez plaintiffs seek to represent pursuant to what is known as the "H2A Program".

3.     On behalf of the workers they seek to represent in the FLSA collective action, and the four (4) classes they seek to represent under the common law of contracts, the Hernandez plaintiffs seek declaratory relief against the named defendants under both the FLSA and the common law of contracts.   The Hernandez plaintiffs also seek damages, back wages and liquidated damages for themselves and on behalf of those workers who file consents to sue within the meaning of 29 U.S.C. §216(b) and back wages for those workers who are members of the four (4) classes of workers that the Hernandez plaintiffs seek to represent under the common law of contracts against the defendants, jointly and severally.   The claims of the Hernandez plaintiffs for actual damages, back wages, and/or liquidated damages are based upon either: (a) the failure of one or more of the defendants to pay all wages when they were due under the FLSA and/or the contract

for the first workweek that the defendants jointly and/or severally employed the Hernandez plaintiffs and those persons whom the Hernandez plaintiffs seek to represent, and (b) a refusal to recruit and/or hire workers on the basis of their membership in or affiliation with a labor organization.

II.   JURISDICTION

4.   Jurisdiction is conferred upon this Court over all defendants named in this action pursuant to 28 U.S.C. §§1331 and 1337, 29 U.S.C. § 216(b), and 28 U.S.C. §1367(a).

5.   This Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

III.   VENUE

6.   Venue over this action lies in this Court pursuant to 28 U.S.C. §§1391(b)(2), and 29 U.S.C. §216(b).   In the four (4) years immediately preceding the date on which this action was filed, the Bland defendants, ILMC, MOA, and CSI jointly and/or severally employed the Hernandez plaintiffs and a substantial number of the members of the classes or persons that the Hernandez plaintiffs seek to represent in one or more of the counties specified in 28 U.S.C. §90(c) for the first and last pay periods that the Hernandez plaintiffs and those members and persons whom the Hernandez plaintiffs seek to represent were employed to perform any work at any time in those same workweeks.   Therefore, a substantial part of the events or omissions giving rise to the claims of the plaintiff and the classes he seeks to represent

occurred in the judicial district of the U.S. District Court for the Southern District of Georgia.

7.    Venue over this action also lies in this Court pursuant to 28 U.S.C. §§1391(b)(1), and 29 U.S.C. §216(b).   On the date on which this action was filed and in the four (4) year time period immediately preceding that date, the principal place of business and residence of the Bland defendants were and are located in one or more of the counties listed in 28 U.S.C. §90(c).

8.    On information and belief, on the date on which this action was filed and in the four (4) year time period immediately preceding that date, defendants MOA, CSI, and ILMC have regularly and continuously engaged in business activities in the one or more of the counties listed in 28 U.S.C. §90(c).   Among other things, those business activities include and have included regular and ongoing use by those three (3) same defendants of electronic mail, facsimile, telephone, and written communications to communicate on a regular basis with one or more of the Bland defendants as part of the recruiting, hiring, and transportation process that is the subject of this complaint.   Upon information and belief, those business activities also include and have included actual travel to, through, and/or from one or more of those same counties by defendants agent(s) and/or employee(s) of CSI and/or MOA, and/or agent(s) and/or employee(s) of ILMC.

IV.   NAMED PLAINTIFFS

9.    In the time period from 2002 to the present, the named plaintiffs were jointly and severally employed by one or more of

the Bland defendants in and around Toombs and/or Tattnall County, Georgia and/or one or more other counties in Georgia listed in 28 U.S.C. §90(c) as follows:

(a)  Plaintiff Nicolás Ramos-Barrientos ("Ramos") was employed by one or more of the Bland defendants in the planting of onions in the late fall and early winter of 2002 and 2004, and/or in the harvest of onions in the late spring and early summer of 2003 and 2004.  In or about the late spring or early summery of 2004, The North Carolina Grower's Association, Inc. (hereinafter referred to as the "NCGA") and Craig Stan Eury, Jr. transferred Ramos from his work as a H2A worker employed by one or more of the Bland defendants to employment in the harvest of tobacco with the NCGA and one of its grower members in North Carolina until the completion of the tobacco harvest in North Carolina in 2004.  When plaintiff Ramos completed that 2004 tobacco harvest work after 16 September 2004 for one or more of the grower members of the NCGA, defendant ILMC did not recruit, hire, transport, or transfer him to work in Georgia in the planting of onions for one or more of the Bland defendants under the H2A program nor did ILMC, CSI, or MOA recruit, hire, or refer plaintiff Ramos for any other employment in the sweet potato harvest in the late fall and/or early winter of 2004.

(b)  Plaintiff Jorge Hernandez-Antonio ("Hernandez") was employed by one or more of the Bland defendants in the planting of onions in the late fall and early winter of 2003, and/or in the harvest of onions in the late spring and early

summer of 2004 and 2005.  In or about the late spring or early summer of 2004, NCGA transferred Hernandez from his work as a H2A worker employed by one or more of the Bland defendants to employment in the harvest of tobacco with the NCGA and one of its grower members in North Carolina until the completion of the tobacco harvest in North Carolina in 2004.  When plaintiff Hernandez completed the onion harvest in or about May 2005 for one or more the Bland defendants, defendants ILMC did not transfer him to work in tobacco in North Carolina with a member(s) of the NCGA nor did ILMC, CSI, or MOA recruit, hire, or refer plaintiff Hernandez for any other employment in the tobacco or sweet potato harvest in North Carolina or onion planting in Georgia under the H2A program with any member(s) of the NCGA and/or one or more of the Bland defendants in 2005.

(c)   Plaintiff Gregorio Ponce-Hernandez ("Ponce") was employed in the harvest of onions in the late spring and early summer of 2004 and 2005.  When plaintiff Ponce completed work in the onion harvest in or about May 2004 in Georgia under the H2A program with one or more of the Bland defendants, NCGA transferred Ponce to work in tobacco in North Carolina with a member(s) of the NCGA.

(d)   Plaintiff Anselmo Hernandez-Martinez ("Martinez") was employed in the harvesting of onions in or about April and/or May 2004 and 2005.  When plaintiff Martinez completed work in the onion harvest in or about May 2004 in Georgia under the H2A program with one or more of the Bland defendants, NCGA transferred

6

Martinez to work in the harvest of tobacco and sweet potatoes in North Carolina with a member(s) of the NCGA. In or about November 2004, the NCGA and defendants ILMC recruited, transported, and transferred Martinez from North Carolina to Georgia to work in the planting of onions for one or more of the Bland defendants.

(e) Plaintiff Catalino Hernandez-Rubio ("Rubio") was employed by one or more of the Bland defendants in the planting of onions in the late fall and early winter of 2002, 2003, 2004, and 2005, and/or in the harvest of onions in the late spring and early summer of 2003 and 2004. In or about November 2004, NCGA and the ILMC transferred Rubio from his work as a H2A worker employed in North Carolina by the NCGA and one or more member(s) of the NCGA to employment in the onion harvest in Georgia under the H2A program by one or more of the Bland defendants.

10. The named plaintiffs were jointly and severally recruited in Mexico and transported from Mexico to Georgia by or at the direction of or by arrangements made by ILMC, MOA, and/or the CSI pursuant to arrangements that were made by one or more of those same person(s) and/or entities to enable the named plaintiffs to work for one or more of the Bland defendants pursuant to the H2A program in and around Toombs and/or Tattnall County, Georgia and/or one or more other counties in Georgia listed in 28 U.S.C. §90(c) for the following time periods:

(a) Plaintiff Nicolás Ramos-Barrientos ("Ramos") was recruited in and transported from Mexico: (i) in the late spring or early summer of 2003 and 2004 for agricultural employment in

Georgia for the harvesting of onions for one or more of the Bland defendants, and (ii) in or about November 2004 for agricultural employment in Georgia for the planting of onions for one or more of the Bland defendants.

(b)   Plaintiff Jorge Hernandez-Antonio ("Hernandez") was recruited and transported from Mexico: (i) in the late fall and early winter of 2003 for agricultural employment in Georgia for the planting of onions for one or more of the Bland defendants, and (ii) in the late spring and early summer of 2004 and 2005 for agricultural employment in Georgia for the harvesting of onions for one or more of the Bland defendants.

(c)   Plaintiff Gregorio Ponce-Hernandez ("Ponce") was recruited and transported from Mexico in the late spring and early summer of 2004 and 2005 for agricultural employment in Georgia in the harvesting of onions for one or more of the Bland defendants.

(d)   Plaintiff Anselmo Hernandez-Martinez ("Martinez") was recruited and transported from Mexico in or about April and/or May 2004 and 2005 for agricultural employment in Georgia in the harvesting of onions for one or more of the Bland defendants.

(e)   Plaintiff Catalino Hernandez-Rubio ("Rubio") was recruited and transported from Mexico: (i) in the late spring and early summer of 2003 and 2004 for agricultural employment in Georgia in the harvest of onions for one or more of the Bland defendants, and (ii) in the late fall and early winter of 2003 and 2005 for agricultural employment in Georgia in the planting of onions for one or more of the Bland defendants.

11.   Each of the named plaintiffs has been a member of FLOC since on or before 16 September 2004, the date on which FLOC and The North Carolina Grower's Association, Inc. ("NCGA") signed a collective bargaining agreement ("CBA") for FLOC to act as the exclusive bargaining agent by all H2A workers jointly or severally employed by NCGA in North Carolina from at least 16 September 2004 through at least 1 January 2008.

12.   The employment referenced in ¶¶9(a)-(e) above by one or more of the Bland defendants and/or the NCGA was pursuant to a labor certification(s) and visas issued to the NCGA, one or more of NCGA's grower members, one or more of the Bland defendants, and/or ILMC, and the Hernandez plaintiffs under 8 U.S.C. §§1101(a)(15)(H)(ii)(a) and 1184(c).

(a)   For each work period in the harvest or planting of onions in the time period on 1 October 2004 that is alleged in ¶¶9(a)-(e) above of this Complaint where that work period(s) was immediately preceded by the recruiting and transportation that is alleged in ¶¶10(a)-(e) above of this Complaint, the Bland defendants, ILMC, and MOA jointly and severally employed the Hernandez plaintiffs to perform that agricultural labor on a temporary basis for at least the first workweek that they were employed in Georgia by one or more of the Bland defendants when they arrived in Georgia after their travel from Mexico to Georgia.

(b)   For each work period in the harvest or planting of onions in the time period after approximately 1 October 2004 to the present that is alleged in ¶¶9(a)-(e) above of this Complaint

where that work period(s) was immediately preceded by the recruiting and transportation that is alleged in ¶¶10(a)-(e) above of this Complaint, the Bland defendants, ILMC, and CSI jointly and severally employed the Hernandez plaintiffs to perform that agricultural labor on a temporary basis for at least the first workweek that they were employed in Georgia by one or more of the Bland defendants when they arrived in Georgia after their travel from Mexico to Georgia.

13. During the employment by the Bland defendants and one or more of the remaining named defendants that is described in ¶¶12(a)-(b) above the Hernandez plaintiffs were engaged in interstate commerce, and/or was employed in an enterprise engaged in commerce or in the production of goods for commerce operated by one or more of the Bland defendants within the meaning of 29 U.S.C. §203(s)(1)(A).

V. DEFENDANTS

14. At all times relevant to this action, defendant International Labor Management Corporation ("ILMC") is and has been a closely held, for-profit corporation organized under the laws of the State of North Carolina to provide labor consulting, recruiting, hiring, referral, transfer, and transportation services for any employers under the H2B program (codified at 8 U.S.C. §§1184(c) and 1101(a)(15)(H)(ii)(b) so long as those jobs were located outside the State of North Carolina, and regardless of whether the H2B employees of that employer were members of or affiliated with a labor organization.

10

15.  At all times in the time period on and after approximately 16 September 2004 to the present, defendant International Labor Management Corporation ("ILMC") is and has been a closely held, for-profit corporation organized under the laws of the State of North Carolina to provide labor consulting, recruiting, hiring, referral, transfer, and transportation services for both agricultural employers like the Bland defendants under the H2A program and for other employers under the H2B program so long as those workers were employed outside the State of North Carolina and were not a member of the Farm Labor Organizing Committee, AFL-CIO (FLOC), or some other labor union.

16.  At all times relevant to this complaint, Craig Stan Eury, Jr. has been and continues to be the President of ILMC.

17.  Upon information and belief, at all times from 14 August 1996 to the present, Susan Eury, the spouse of Craig Stan Eury, Jr., has been and continues to be the Secretary/Treasurer or some other corporate officer or member of the board of directors of ILMC.

18.  Upon information and belief, at all times from 14 August 1996 to the present, Craig Stan Eury, Jr. and his spouse, Susan Eury, jointly owned defendant ILMC.

19.  At all times relevant to this action, Craig Stan Eury, Jr., P.O. Box 630 Vass, NC 28394, is and has been the registered agent for service of process on ILMC.

20.  At all times before approximately 16 September 2004, The North Carolina Grower's Association, Inc. ("NCGA") is and has

been a closely held, non-profit corporation organized under the laws of the State of North Carolina to provide H2A and H2B labor consulting, recruiting, hiring, referral, transfer, transportation, and supervisory services for employers of workers under the H2A program like the Bland defendants and members of the NCGA both within and without the States of Georgia and North Carolina.

21.   At all times on and after approximately 16 September 2004, NCGA continued to be a closely held, non-profit corporation organized under the laws of the State of North Carolina to provide H2A and H2B labor consulting, recruiting, hiring, referral, transfer, transportation, and supervisory services for both agricultural and non-agricultural employers of H2A and H2B workers represented by FLOC with regard to employment under both the H2A and H2B program only within the State of North Carolina.

22.   At all times relevant to this complaint, Craig Stan Eury, Jr. has been and continues to be the President or Executive Director of the NCGA.

23.   At all times relevant to this action, Craig Stan Eury, Jr., 200 Cameron Ave., P.O. Box 417 Vass, NC 28394, is and has been the registered agent for service of process on NCGA.

24.   For the entire time period from approximately on or after 1 October 2004 to the present, in their capacity as the joint owners and/or corporate officers of ILMC, Craig Stan Eury, Jr. and his spouse, Susan Eury, controlled and operated the labor consulting, recruiting, hiring, referral, transfer, and

transportation activities of defendant ILMC on a day-to-day basis. In that same capacity, the Eurys determined whether to recruit, hire, refer, transfer, and/or transport the Hernandez plaintiffs, the members of the "right to work" contract plaintiff class and subclass defined in ¶69 below, the members of the "right to work" class and subclass of workers defined ¶81 below to perform the planting and/or harvest of onions for one or more of the Bland defendants in and around Toombs and Tattnall Counties, Georgia on and after 1 October 2004 under the H2A program.

25.   For the entire time period from at least 1 October 2003 to approximately 1 October 2004, in his capacity as the Director of the NCGA, Craig Stan Eury, Jr. controlled and operated the labor consulting, recruiting, hiring, referral, transfer, and transportation activities of NCGA on a day-to-day basis with regard to the nature, extent, and manner in which the NCGA performed those same activities on a day-to-day basis for agricultural and non-agricultural employers under the H2A program and H2B program for employers like the Bland defendants and members of the NCGA located in Georgia and other states outside of North Carolina at all times from 14 August 1996 to approximately 1 October 2004.   In that same capacity, Craig Stan Eury, Jr. determined whether to recruit, hire, refer, transfer, and provide transportation to one or more of the Hernandez plaintiffs, the members of the "right to work" contract plaintiff class and subclass defined in ¶69 below, and the members of the "right to work" class and subclass defined in ¶81 below to work for one or

more of the Bland defendants at any time during the entire time
period from at least 1 September 2003 to 1 October 2004.

26.   For at least the first workweek, if any, of any work in
Georgia alleged in ¶¶9(a)-(e) and 10(a)-(e) above, for at least
the last workweek, if any, of any work in North Carolina alleged
in ¶¶9(a)-(e) above, and for the time period immediately preceding
or following any such periods of work during which one or more of
the Hernandez plaintiffs were available for and expressed interest
in immediate employment with one or more of the Bland defendants
and/or some agricultural employer member(s) of the NCGA under the
H2A program at any time in the time period on or after
approximately 1 October 2004 to the present, together with the
Bland defendants, defendant ILMC, and one or both of the Eurys
jointly and severally employed one or more of the Hernandez
plaintiffs, the FLSA plaintiff collective defined in ¶¶52-55, the
members of contract plaintiff class defined in ¶58 above, the
"right to work" contract plaintiff class and subclass defined in
¶69 below, and the "right to work" plaintiff class and subclass
defined in ¶81 below within the meaning of 20 C.F.R.
§§655.101(a)(2)-(3), 29 U.S.C. §§203(d) and (g), and Ga.Gen.Stat.
§§34-6-20(2), 34-6-21, and 34-6-27. For various times during this
time period, one or more of the Bland defendants, ILMC, and one or
both of the Eurys recruited, hired, referred, transferred,
provided transportation to, directed, controlled, or supervised
the work of, and/or determined the rate or method of payment of
the Hernandez plaintiffs, the similarly situated FLSA plaintiff

14

collective, and the members of those same three (3) plaintiff classes and subclasses as part of their work in Georgia under the H2A program for one or more of the Bland defendants.

27.  For at least the first workweek, if any, of any work in Georgia alleged in ¶¶9(a)-(e) and ¶¶10(a)-(e) above, for at least the last workweek, if any, of any work in North Carolina alleged in ¶¶9(a)-(e) above, and for the time period immediately preceding or following any such periods of work during which one or more of the Hernandez plaintiffs were available for and expressed interest in immediate employment with one or more of the Bland defendants and/or some agricultural employer member(s) of the NCGA under the H2A program at any time in the time period on or after approximately 1 October 2004 to the present, together with the Bland defendants, NCGA and Craig Stan Eury, Jr. jointly and severally employed one or more of the Hernandez plaintiffs, the FLSA plaintiff collective defined in ¶¶52-55, the members of contract plaintiff class defined in ¶58 above, the "right to work" contract plaintiff class and subclass defined in ¶69 below, and the "right to work" plaintiff class and subclass defined in ¶81 below within the meaning of 20 C.F.R. §§655.101(a)(2)-(3), 29 U.S.C. §§203(d) and (g), and Ga.Gen.Stat. §§34-6-20(2), 34-6-21, and 34-6-27.  For various times during this time period, one or more of the Bland defendants, NCGA and Craig Stan Eury, Jr. recruited, hired, referred, transferred, provided transportation to, directed, controlled, or supervised the work of, and/or determined the rate or method of payment of the Hernandez

plaintiffs, the similarly situated FLSA plaintiff collective, and the members of those same three (3) plaintiff classes and subclasses as part of their work in Georgia under the H2A program for one or more of the Bland defendants.

28.   At all times on or after approximately 16 September 2004, defendant ILMC, Craig Stan Eury, Jr., and Susan Eury have, together with one or more of the Bland defendants, jointly and severally employed one or more of the Hernandez plaintiffs and the "right to work" contract plaintiff class and subclass defined in ¶69 below within the meaning of the express terms of the Agricultural and Food Processing Clearance Order job offer that defendant ILMC, the Bland defendants, Craig Stan Eury, Jr., and Susan Eury made to the Hernandez plaintiffs and that same class and subclass.

29.   At all times before approximately 1 October 2004 and after 1 September 2003, the NCGA, Craig Stan Eury, Jr., and one or more of the Bland defendants, have jointly and severally employed one or more of the Hernandez plaintiffs and the "right to work" contract plaintiff class and subclass defined in ¶69 below within the meaning of the express terms of the Agricultural and Food Processing Clearance Order job offer that the Bland defendants, the NCGA, and Craig Stan Eury, Jr. made to the Hernandez plaintiffs and that same class and subclass.

30.   At all times on or after approximately 1 October 2004 to the present, defendant Consular Services International ("CSI") is and has been a closely held, for-profit corporation or business

16

entity organized by Michael Bryan Bell (hereinafter referred to as "Bell") to provide H2A and H2B recruiting, hiring, referral, transfer and transportation services in Mexico for Mexican nationals who sought employment in the United States under the H2A and/or H2B program with employers like the ILMC and the Bland defendants who employed workers under the H2A program or H2B program outside of the State of North Carolina when those workers so long as those workers were not members of or affiliated with FLOC or some other labor union. During this same time period, Bell was and continues to be the President of CSI.

31. Upon information and belief, at all times from on or about approximately 16 September 2004 to the present, Mike Bell owned and continues to own part or all of defendant CSI.

32. At all times relevant to this action, Bell, La Calle Aconrlo número 3937, de la Colonia Parques de Guadalupe, Guadalupe, Nuevo León, Mexico, is and has been the registered agent or lawful agent for service of process on CSI.

33. At all times relevant to this complaint, defendant Manpower of the Americas ("MOA") is and has been a closely held, for-profit corporation or business entity organized by Bell to provide H2A and H2B recruiting, hiring, referral, transfer, and transportation services in Mexico for agricultural employers and non-agricultural employers like NCGA and its members who employed Mexican nationals both within and without North Carolina under the H2A program or H2B program.

34. At all times in the time period from on or after 1
September 2003 and up to at least approximately 1 October 2004,
defendant MOA is and has been a closely held, for-profit
corporation or business entity organized by defendant Bell to
provide H2A and H2B recruiting, hiring, referral, both within and
without the State of North Carolina. During this same time
period, Bell was and continues to be the President of MOA.

35. Upon information and belief, at all times relevant to
this action, Bell owned and continues to own all or part of
defendant MOA.

36. At all times relevant to this action, Bell, La Calle
Aconrlo número 3937, de la Colonia Parques de Guadalupe,
Guadalupe, Nuevo León, Mexico, is and has been the registered or
lawful agent for service of process on MOA.

37. In his capacity as the owner or part owner and/or
corporate officers of CSI and MOA, Bell determined and controlled
the amount of wages paid to one or more of the Hernandez
plaintiffs, the members of the collective action described in
¶¶52-55 below, and the members of the three classes and subclasses
they seek to represent for at least the first workweek in which
those workers performed any work for one or more of the Bland
defendants in Georgia as alleged in ¶¶9(a)-(e) and 10(a)-(e) above
of this Complaint. In addition, as the owner or part owner and/or
corporate office of CSI and MOA, Bell controlled and operated the
recruiting, hiring, referral, transfer, and transportation

activities of defendant CSI and MOA in Mexico on a day-to-day basis at all times from 1 January 2000 to the present.

38. At all times relevant to this action in the time period from at least 1 September 2003 to the present, one or more of the Bland defendants expressly designated defendants ILMC and one or both of the Eurys to act as the agents of the Bland defendants in the United States and Mexico to recruit, hire, refer, and transport Mexican nationals to travel from their individual places of recruitment in Mexico to their place of employment in Georgia by the Bland defendants under the H2A program in Georgia, and/or to recruit, hire, refer, transfer, and/or to transport H2A workers who had already arrived and were working in North Carolina to transfer and transport those same workers from North Carolina to Georgia to their place of employment in Georgia by the Bland defendants under the H2A program to perform agricultural labor for one or more of the Bland defendants.

39. At all times in the time period from approximately 16 September 2004 to the present, defendant ILMC, Craig Stan Eury, Jr., and Susan Eury expressly designated defendant CSI and Mike Bell to act as the agents of the Eurys and ILMC in Mexico to recruit, hire, refer, and transport Mexican national workers from their individual places of recruitment in Mexico to the USA-Mexican border for the purpose of performing agricultural labor under the H2A program for one or more of the Bland defendants.

40. At all times in the time period from at least 1 September 2003 to approximately 1 October 2004, NCGA and Craig

Stan Eury, Jr. expressly designated defendant MOA and Mike Bell to act as the agents of the Craig Stan Eury, Jr. and NCGA in Mexico to recruit, hire, refer, and transport Mexican national workers from their individual places of recruitment in Mexico to the USA-Mexican border for the purpose of performing agricultural labor under the H2A program for one or more of the Bland defendants.

41.   At all times in the time period from 1 January 2000 to the present, the actions of defendant ILMC, NCGA, Craig Stan Eury, Jr., and/or Susan Eury that are alleged in ¶¶39 and 40 above were made with the express knowledge of one or more of the Bland defendants before defendant CSI, defendant MOA, and/or Mike Bell took the action(s) that are the subject of this complaint in Mexico to recruit, hire, refer, and transport Mexican national workers from their individual places of recruitment in Mexico to the USA-Mexican border for the purpose of performing agricultural labor under the H2A program for one or more of the Bland defendants.

42.   For at least the first workweek, if any, of any work in Georgia alleged in ¶¶9(a)-(e) and ¶¶10(a)-(d) above, for at least the last workweek, if any, of any work in North Carolina alleged in ¶¶9(a)-(e) above, and for the time period immediately preceding or following any such periods of work during which one or more of the Hernandez plaintiffs were available for and expressed interest in immediate employment with one or more of the Bland defendants and/or some agricultural employer member(s) of the NCGA under the H2A program at any time in the time period on or after

approximately 1 October 2004 to the present, together with the Bland defendants, defendant CSI, and Mike Bell jointly and severally employed one or more of the Hernandez plaintiffs, the FLSA plaintiff collective defined in ¶¶52-55, the members of contract plaintiff class defined in ¶58 above, the "right to work" contract plaintiff class and subclass defined in ¶69 below, and the "right to work" plaintiff class and subclass defined in ¶81 below within the meaning of 20 C.F.R. §§655.101(a)(2)-(3), 29 U.S.C. §§203(d) and (g), and Ga.Gen.Stat. §§34-6-20(2), 34-6-21, and 34-6-27. For various times during this time period, one or more of the Bland defendants, defendant CSI, and Bell recruited, hired, referred, transferred, provided transportation to, directed, controlled, or supervised the work of, and/or determined the rate or method of payment of the Hernandez plaintiffs, the similarly situated FLSA plaintiff collective, and the members of those same three (3) plaintiff classes and subclasses as part of their work in Georgia under the H2A program for one or more of the Bland defendants.

43.   For at least the first workweek, if any, of any work in Georgia alleged in ¶¶9(a)-(e) and ¶¶10(a)-(e) above, for at least the last workweek, if any, of any work in North Carolina alleged in ¶¶9(a)-(e) above, and for the time period immediately preceding or following any such periods of work during which one or more of the Hernandez plaintiffs were available for and expressed interest in immediate employment with one or more of the Bland defendants and/or some agricultural employer member(s) of the NCGA under the

H2A program at any time in the time period on or after 1 September 2003 and before approximately 1 October 2004, together with the Bland defendants, defendant MOA, and Mike Bell jointly and severally employed one or more of the Hernandez plaintiffs, the FLSA plaintiff collective defined in ¶¶52-55, the members of contract plaintiff class defined in ¶58 above, the "right to work" contract plaintiff class and subclass defined in ¶69 below, and the "right to work" plaintiff class and subclass defined in ¶81 below within the meaning of 20 C.F.R. §§655.101(a)(2)-(3), 29 U.S.C. §§203(d) and (g), and Ga.Gen.Stat. §§34-6-20(2), 34-6-21, and 34-6-27.  For various times during this time period, one or more of the Bland defendants, defendant MOA, and Bell recruited, hired, referred, transferred, provided transportation to, directed, controlled, or supervised the work of, and/or determined the rate or method of payment of the Hernandez plaintiffs, the similarly situated FLSA plaintiff collective, and the members of those same three (3) plaintiff classes and subclasses as part of their work in Georgia under the H2A program for one or more of the Bland defendants.

44.   At all times in the time period from 1 January 2000 to the present, defendant Delbert C. Bland ("Bland") has resided and continues to reside in Tattnall County, Georgia at 1126 Raymond Bland Road, Reidsville, GA 30453.  At all times in the time period from 1 January 2000 to the present, defendant Bland is and has been the Chief Executive Officer ("CEO") of Bland Farms, Inc., Bland Packing Company, and Bland Farms Sales, Ltd., the Chief

Financial Officer ("CFO") of Bland Farms, Inc.  Upon information and belief, at all times on or after 29 December 2000, defendant Bland has been and continues to be the managing partner or managing agent for both Bland Farms I, LLC and Bland Farms, LLC since each of those same corporate entities were organized.

45.  At all times in the time period from 1 January 2000 to the present, Glen A. Cheney, P.C., 100 Memorial Drive, Reidsville, GA 30453-2299, in Tattnall County, Georgia, has been and continues to be the registered agent for service of process on Bland Farms, Inc., Bland Packing Company, Bland Farms I, LLC, Bland Farms, LLC, and Bland Farms Sales, Ltd.

46.  At all times in the time period from 1 January 2000 to the present, to the extent that Bland Farms, Inc., Bland Packing Company, Bland Farms Sales, Ltd., Bland Farms I, LLC, and Bland Farms, LLC had and continue to have a principal place of business at all, each such corporate entity had that entity's principal place of business in Tattnall County, Georgia.

47.  At all times in the time period from 1 July 2003 to the present, Bland Farms, Inc., Bland Packing Company, Bland Farms I, LLC, Bland Farms, LLC, and Bland Farms Sales, Ltd. are and all continue to be a part of the same "enterprise" within the meaning of 29 U.S.C. §203(r).

48.  For any work performed in Georgia under the H2A program that is alleged in ¶¶9(a)-(e) and ¶¶10(a)-(e) above, for the last workweek, if any, of any work in North Carolina alleged in ¶¶9(a)-(e) above, and for the time period immediately preceding or

following any such periods of work during which one or more of the Hernandez plaintiffs were available for and expressed interest in immediate employment with one or more of the Bland defendants and/or some agricultural employer member(s) of the NCGA under the H2A program at any time in the time period on or after 1 September 2003 up to the present date, Delbert C. Bland, Bland Farms, Inc., Bland Packing Company, Bland Farms I, LLC, Bland Farms, LLC, and Bland Farms Sales, Ltd. all directed, controlled, and supervised one or more of the Hernandez plaintiffs and the members of the two (2) plaintiff classes that they seek to represent.

49.   At all times in the time period from 1 September 2003 to the present, Delbert C. Bland, Bland Farms, Inc., Bland Packing Company, Bland Farms I, LLC, Bland Farms, LLC, and Bland Farms Sales, Ltd. determined at least in part the amount and manner by which wages were paid to one or more of the Hernandez plaintiffs and the members of the four (4) classes and subclasses that the Hernandez plaintiffs seek to represent at any time during those same time periods described in ¶48 above of this Complaint.

50.   For any work performed in Georgia under the H2A program that is alleged in ¶¶9(a)-(e) and ¶¶10(a)-(e) above, for the last workweek, if any, of any work in North Carolina alleged in ¶¶9(a)-(e) above, and for the time period immediately preceding or following any such periods of work during which one or more of the Hernandez plaintiffs were available for and expressed interest in immediate employment with one or more of the Bland defendants and/or some agricultural employer member(s) of the NCGA under the

H2A program at any time in the time period on or after 1 September 2003 up to the present date, one or more of the Bland defendants are and have been joint employers of one or more of the Hernandez plaintiffs and the classes and subclasses of workers that the Hernandez plaintiffs seek to represent within the meaning of 20 C.F.R. §§655.101(a)(2)-(3), 29 U.S.C. §§203(d) and (g), and Ga.Gen.Stat. §§34-6-20(2), 34-6-21, and 34-6-27.

51.   For any work performed in Georgia under the H2A program that is alleged in ¶¶9(a)-(e) and ¶¶10(a)-(e) above, for the last workweek, if any, of any work in North Carolina alleged in ¶¶9(a)-(e) above, and for the time period immediately preceding or following any such periods of work during which one or more of the Hernandez plaintiffs were available for and expressed interest in immediate employment with one or more of the Bland defendants and/or some agricultural employer member(s) of the NCGA under the H2A program at any time in the time period on or after 1 September 2003 up to the present date, and, with regard to the classes and subclasses defined in ¶¶52-55, 58, 69, and 81 below, the work that the Bland defendants jointly employed one or more of the Hernandez plaintiffs and the four (4) plaintiff classes and subclasses that the Hernandez plaintiffs seek to represent to perform was work that was engaged in interstate commerce, and/or work that was part of an enterprise operated by the Bland defendants that was engaged in commerce or in the production of agricultural goods for commerce within the meaning of 29 U.S.C. §203(s)(1)(A).

VI.   FLSA STATUTORY COLLECTIVE ACTION ALLEGATIONS

52.   The Hernandez plaintiffs maintain this FLSA action under 29 U.S.C. §216(b) for each similarly situated employee against Delbert C. Bland, Bland Farms, LLC, Bland Farms I, LLC, Bland Farms, Inc., Bland Farms Sales, Ltd., Bland Packing Company, ILMC, Manpower of the Americas, and Consular Services International in the three (3) year time period immediately preceding the date on which this action was filed.

53.   This FLSA action is on behalf of those members of the FLSA collective action for at least the first workweek in the time period described in ¶52 above in which one or more of the Hernandez plaintiffs and the members of the FLSA collective action performed any work in Georgia for one or more of the Bland defendants when that worker arrived in Georgia after that worker's transportation from Mexico to Georgia pursuant to a labor certification and visa issued to one or more of the Bland defendants, the ILMC, and those workers under 8 U.S.C. §§1184(c) and 1101(a)(15)(H)(ii)(a)(the "H2A program").

54.   The defendants named in ¶52 above jointly or severally employed the Hernandez plaintiffs and an unspecified number of other alien workers under the H2A program to perform agricultural labor for one or more of the Bland defendants in at least the first workweek when one or more of the Hernandez plaintiffs and their other co-workers arrived in Georgia after their transportation from Mexico to Georgia.

55.   Pursuant to the collective action procedure specified at 29 U.S.C. §216(b), the Hernandez plaintiffs file this

collective action for each similarly situated person and employee of the named defendants who files, will file, or who has filed a written consent to be a party to this collective action pursuant to 29 U.S.C. §216(b) within the applicable statute of limitation(s)("FLSA collective").

56.  This collective action by similarly situated persons under 29 U.S.C. §216(b) is based upon the failure of the named defendants to reimburse the Hernandez plaintiffs and the members of the collective action on or before the regular payday for at least the first workweek and/or pay in advance to the Hernandez plaintiffs and the members of the FLSA collective for certain transportation, visa expenses and fees, and recruiting fees that the Hernandez plaintiffs and the members of the FLSA collective they seek to represent paid before they performed any work in Georgia under the H2A program when those expenses and fees were primarily for the benefit of the named defendants.

57.  As a result of the failure to reimburse and/or pay in advance in the manner described in ¶56 above, the wages that the Hernandez plaintiffs and the members of the FLSA collective received free and clear from the named defendants on or before the regularly scheduled payday for at least the first workweek that the Hernandez plaintiffs and the members of the collective action performed work in Georgia for one or more of the Bland defendants were less than the minimum wage required by 29 U.S.C. §206 on a weekly basis for each hour or part of an hour of actual work that the Hernandez plaintiffs and each such similarly situated person

was, is, or will be employed to perform for one or more of the Bland defendants in at least the first workweek that each such person was so employed.

VII. <u>RULE 23(b)(3) CLASS ACTION ALLEGATIONS (contract)</u>

58. The class of persons that the Hernandez plaintiffs seeks to represent under Rule 23(b)(3), Fed.R.Civ.P., for declaratory and compensatory relief under the common law of contracts consists of all alien or formerly alien workers who were and/or are jointly or severally employed by one or more of the named defendants at any time in the three (3) year time period immediately preceding the date on which this action was filed, and who actually performed any agricultural labor for one or more the Bland defendants within that same three (3) year time period in at least the first workweek after that worker arrived in Georgia pursuant to a labor certification and visa under the H2A program, and pursuant to a contract formed with those workers under 20 C.F.R. §655.103(b)(describing the employer assurances)and 20 C.F.R. §655.102(b)(9)(setting the pay rate) and item 9 of the Clearance Orders and job offers made by the ILMC, NCGA, and/or one or more of the Bland defendants that was accepted by the Hernandez plaintiffs and the plaintiff class defined in this paragraph. ("contract plaintiff class")

59. The contract plaintiff class of persons each consists of well in excess of 200 persons.

60. Joinder of all contract plaintiff class members would be impracticable if not impossible based upon the extreme

geographic dispersion of the putative class members within and without the state of Georgia, including at least one country other than the United States of America, and by the language barriers imposed by the inability of a significant number of those class members to speak English.

61. The questions of law or fact which are common to the Hernandez plaintiffs and the members of the contract plaintiff class and which predominate over any other questions affecting the individual members of that class under Rule 23, Fed.R.Civ.P., are: a) On or before the regularly scheduled payday for the first workweek that the Hernandez plaintiffs and the members of the contract plaintiff class performed any agricultural work for one or more of the Bland defendants, did the named defendants fail to reimburse and/or pay in advance to the Hernandez plaintiffs and each contract plaintiff class member for the transportation, visa expenses and fees, and recruiting fees required by the "H2A program" and one or more of the named defendants used and/or employed to recruit, hire, and transport the Hernandez plaintiffs and the members of the contract plaintiff class? b) If yes, did this failure constitute a failure by the named defendants to pay the Hernandez plaintiffs and/or any member of the contract plaintiff class all the wages they had agreed to pay each such person at the agreed rate when those wages were due for each hour or part of an hour in at least the first workweek that each such worker was jointly and severally employed by one or more of the named defendants pursuant to the written job offer described in 20

29

C.F.R. §§655.102(b)(9) and 653.103(b) which was accepted by the Hernandez plaintiffs and each contract plaintiff class member? c) Did the written job offer described in 20 C.F.R. §§655.102(b)(9) and 653.103(b) which was accepted by the Hernandez plaintiffs and each contract plaintiff class member constitute a contract between the named defendants and the Hernandez plaintiffs and/or contract plaintiff class members who accepted this offer? (d) Were the transportation, visa expenses and fees, and recruiting fees that the Hernandez plaintiffs and the other contract plaintiff class members paid primarily for the benefit of the Hernandez plaintiffs and the contract plaintiff class or were those same expenses and fees primarily for the benefit of the named defendants? (e)    Did the named defendants agree or contract to pay free and clear the Hernandez plaintiffs and each member of the contract plaintiff class at the wage rate required by 29 U.S.C. §206(a), and the adverse effect wage rate ("AEWR") for at least the first workweek of work performed by the Hernandez plaintiffs and each member of the contract plaintiff class for one or more of the Bland defendants in Georgia? (f) Upon information and belief, the named defendants do not have any unique defense(s) against the Hernandez plaintiffs or any member of the contract plaintiff class that the Hernandez plaintiffs seek to represent with respect to the claim for relief under the common law of contracts alleged by the Hernandez plaintiffs and the members of the contract plaintiff class in this action.

62.  The claims of the Hernandez plaintiffs who seek to represent the contract plaintiff class are typical of the claims of that class of persons that the Hernandez plaintiffs seek to represent.  The Hernandez plaintiffs and the contract plaintiff class both allege that the named defendants breached their contractual agreement under 20 C.F.R. §§655.103(b), 655.102(b)(9)(i), and 655.107 to comply with all applicable federal and state employment-related laws, including the FLSA and the common law of contracts relating to employment, when the named defendants failed to pay them all of the wages each such person was due when those weekly wages were due at the agreed rate in at least the first workweek that they performed any agricultural work for one or more of the Bland defendants in Georgia.

63.  The Hernandez plaintiffs and the contract plaintiff class allege that this breach of contract occurred when the named defendants did not reimburse and/or pay in advance them on or before the regularly scheduled payday for at least the first workweek that the named defendants jointly and severally employed them for the transportation, visa expenses and fees, and recruiting fees that were primarily for the benefit of the named defendants to enable the named defendants to jointly and severally recruit, hire, transport, and employ the Hernandez plaintiffs and the contract plaintiff class under the "H2A program" for at least the first workweek in which the Hernandez plaintiffs and the members of the contract plaintiff class were jointly and severally

31

employed by the named defendants in Georgia after their transportation from Mexico to Georgia.

64.   As a result, the Hernandez plaintiffs and the contract plaintiff class allege that they were not paid at the wage rate that the named defendants had agreed to pay them pursuant to the Agricultural and Food Processing Clearance Orders submitted by the Bland defendants, ILMC, and the Eurys for at least the first workweek that those workers were so employed.

65.   The Hernandez plaintiffs will fairly and adequately represent the interests of the contract plaintiff class of persons.

66.   The undersigned counsel Robert J. Willis and Brian Spears for the Hernandez plaintiffs are experienced litigators who have been named counsel for several class actions.

67.   The prosecution of separate actions by individual members of the contract plaintiff class under the common law of contracts based upon the breach of contract alleged in ¶¶62-63 above would create a risk of inconsistent or varying adjudications with respect to individual members of the contract plaintiff class which would establish incompatible standards of conduct for the named defendants with respect to the breach of the contract that is alleged in ¶¶62-63 above.

68.   In addition, questions of law and fact common to the members of both the contract plaintiff class predominate over any questions affecting only individual members, and a class action with respect to both the contract plaintiff class is superior to

other available methods for the fair and efficient adjudication of the controversy.

VIII. <u>RULE 23(b)(3) CLASS ALLEGATIONS ( contract – "right to work")</u>

69.   The class of persons that the Hernandez plaintiffs seeks to represent under Rule 23(b)(3), Fed.R.Civ.P., for declaratory, injunctive, and compensatory relief under the common law of contracts consists of all alien or formerly alien workers who were and/or are jointly or severally recruited, offered employment, and/or hired at any physical location both within the United States and/or in Mexico for agricultural employment in Georgia under the H2A program by one or more of the named defendants at any time in the three (3) year time period immediately preceding the date on which this action was filed to the date that the Court enters judgment in this action to perform any agricultural labor for one or more the Bland defendants within that same time period pursuant to the terms of an agricultural clearance order and job offer, labor certification and visa under the H2A program containing the terms and conditions described in 20 C.F.R. §§655.102(a), 655.103(b), 655.102(b)(6), 655.102(b)(9), and 655.102(c), incorporating Ga.Gen.Stat. §§34-6-21, which defendant ILMC and/or one or more of the Bland defendants made to all of the Hernandez plaintiffs and the plaintiff class defined in this paragraph. ("right to work" contract plaintiff class)   This "right to work" contract plaintiff class includes the following subclass:

(a) those members of the "right to work" contract plaintiff class like plaintiffs Hernandez and Ramos whom the Bland defendants and defendant ILMC declined to recruit, hire, and transfer from North Carolina to Georgia for employment under the H2A program in Georgia with one or more of the Bland defendants in the late fall and early winter harvest of onions in 2004, 2005, and 2006 in violation of the terms of the clearance order job offers for employment under the H2A program with one or more of the Bland defendants that are described in 20 C.F.R. §§655.102(a), 655.103(b), 655.102(b)(6), 655.102(b)(9), and 655.102(c), which incorporate the prohibition contained in Ga.Gen.Stat. §34-6-21.

70.   Upon information and belief, both the "right to work" contract plaintiff class and "right to work" contract plaintiff subclass of persons both consist of well in excess of 200 persons.

71.   Joinder of all "right to work" contract plaintiff class and subclass members would be impracticable if not impossible based upon the extreme geographic dispersion of the putative class and subclass members within and without the state of Georgia, including at least one country other than the United States of America, and by the language barriers imposed by the inability of a significant number of those class and subclass members to speak English.   The plaintiffs' request for injunctive relief with respect to the future members of the "right to work" contract and subclass plaintiff class makes joinder of all putative members of this class and subclass impossible because those future members are presently unknown to the named plaintiffs.

72. The questions of law or fact which are common to the Hernandez plaintiffs and the members of the "right to work" contract plaintiff class and subclass and which predominate over any other questions affecting the individual members of that class under Rule 23, Fed.R.Civ.P., are:  (a) As part of the hiring and recruiting process to fill those agricultural jobs in Georgia for which one or more of the Bland defendants and defendant ILMC had received an H2A labor certification to hire and employ H2A workers in Georgia to work for one or more of the Bland defendants in the 3-year time period described in ¶69 above, did the named defendants require the Hernandez plaintiffs and the members of the "right to work" plaintiff class that the Hernandez plaintiffs seek to represent to resign from or to refrain from membership in or affiliation with the a labor organization – the Farm Labor Organizing Committee, AFL-CIO (FLOC)?  (b)  If  yes,  did  these actions  constitute  a  breach  of  the  clearance  order  contract requirements  described  in  20  C.F.R.  §§655.102(a),  655.103(b), 655.102(b)(6),   655.102(b)(9),   and   655.102(c),   incorporating Ga.Gen.Stat. §§34-6-21, between one or more of those same named defendants,  the  Hernandez  plaintiffs,  and  the  members  of  the "right to work" contract plaintiff class that those same named defendants would comply with all applicable federal, state, and local employment-related laws and regulations, use only bona fide occupational  qualifications  for  the  H2A  agricultural  jobs available through those same named defendants with one or more of the Bland defendants in Georgia, and providing to H2A workers at

least the same level of minimum benefits and working conditions to H2A workers as must be offered to U.S. workers with regard to any work for one or more of the Bland defendants that was the subject of any agricultural clearance order that defendant ILMC and/or one or more of the Bland defendants submitted to the U.S. Department of Labor to obtain H2A workers in the 3-year time period described in ¶69 above?   (c)   When the Hernandez plaintiffs and the members of the "right to work" contract plaintiff class that they seek to represent accepted the written clearance order job offer by the ILMC and/or one or more of the Bland defendants that is described in ¶69 above which incorporated the provisions of 20 C.F.R. §§655.102(a), 655.103(b), 655.102(b)(6), 655.102(b)(9), and 655.102(c) and Ga.Gen.Stat. §§34-6-21, did that acceptance by the Hernandez plaintiffs and the members of the "right to work" contract plaintiff class constitute or create a contractual obligation on the part of one or more of the named defendants to the Hernandez plaintiffs and the members of the "right to work" plaintiff class that Hernandez plaintiffs seek to represent which contained all of those same regulatory and statutory obligations and terms?   (d)   Upon information and belief, the named defendants do not have any unique defense(s) against the Hernandez plaintiffs or any member of the "right to work" contract plaintiff class that the Hernandez plaintiffs seek to represent with respect to the claim for relief under the common law of contracts alleged by the Hernandez plaintiffs and the members of the "right to work" contract plaintiff class in this action.

73. The claims of the Hernandez plaintiffs who seek to represent the "right to work" contract plaintiff class and subclass are typical of the claims of that class and subclass of persons that the Hernandez plaintiffs seek to represent. The Hernandez plaintiffs and the "right to work" contract plaintiff class and subclass both allege that the named defendants breached their contractual obligation to them under the terms of the clearance order job offer that are described in 20 C.F.R. §§655.102(a), 655.103(b), 655.102(b)(6), 655.102(b)(9), and 655.102(c) and Ga.Gen.Stat. §34-6-21 by requiring the Hernandez plaintiffs and the members of the "right to work" plaintiff class and subclass that the Hernandez plaintiffs seek to represent to resign from or to refrain from membership in or affiliation with the a labor organization – the Farm Labor Organizing Committee, AFL-CIO (FLOC), failing to comply with their written commitment to comply with all applicable federal, state, and local employment-related laws and regulations, including Ga.Gen.Stat. §34-6-21, using occupational qualifications for the H2A agricultural jobs available through the named defendants with one or more of the Bland defendants in Georgia that were not bona fide, and failing to provide to H2A workers at least the same level of minimum benefits and working conditions to H2A workers as must be offered to U.S. workers with regard to the work for one or more of the Bland defendants that was the subject of the agricultural clearance orders that defendant ILMC, the Eurys, and/or one or more of the Bland defendants submitted to the U.S. Department of

Labor to obtain H2A workers in the 3-year time period described in ¶69 above.

74. The Hernandez plaintiffs and the contract plaintiff class alleges that this breach of contractual obligation occurred in Mexico when, pursuant to the instructions of one or more of the Bland defendants and defendant ILMC, the named defendants refused to recruit, hire, and/or employ and/or rescinded any decision to recruit, hire, and/or employ the Hernandez plaintiffs and the members of the "right to work" contract plaintiff class to perform any work in Georgia under the H2A program for one or more of the Bland defendants on account of the membership and/or affiliation of the Hernandez plaintiffs and the members of the "right to work" contract plaintiff class.

75. Plaintiffs Ramos and Hernandez and the subclass that they seek to represent allege that this breach of contractual obligation occurred in North Carolina in the time periods described in ¶¶9(a)-(b) and 69(a) above when, pursuant to the instructions of one or more of the Bland defendants and defendant ILMC, the named defendants refused to recruit, hire, and/or employ and/or rescinded any decision to recruit, hire, and/or employ the Hernandez plaintiffs and the members of the "right to work" contract plaintiff subclass to perform any work in Georgia under the H2A program for one or more of the Bland defendants on account of the membership and/or affiliation of the Hernandez plaintiffs and the members of the "right to work" contract plaintiff subclass.

76. As a result, the Hernandez plaintiffs and the "right to work" contract plaintiff class and subclass allege that they suffered damages in the form of lost employment at the wage rate and for the hours of work that one or more of the named defendants had agreed to pay them if they had been hired and employed to work in Georgia pursuant to the Agricultural and Food Processing Clearance Orders submitted by the Bland defendants and defendant ILMC.

77. The Hernandez plaintiffs will fairly and adequately represent the interests of the "right to work" contract plaintiff class and subclass of persons.

78. The undersigned counsel Robert J. Willis and Brian Spears for the Hernandez plaintiffs are experienced litigators who have been named counsel for several class actions.

79. The prosecution of separate actions by individual members of the "right to work" contract plaintiff class and subclass under the common law of contracts based upon the breach of contract alleged in ¶¶73-74 above would create a risk of inconsistent or varying adjudications with respect to individual members of the "right to work" contract plaintiff class which would establish incompatible standards of conduct for the named defendants specified in ¶69 above with respect to the breach of the contract that is alleged in ¶¶73-74 above.

80. In addition, questions of law and fact common to the members of both the "right to work" contract plaintiff class predominate over any questions affecting only individual members,

and a class action with respect to both the "right to work" contract plaintiff class is superior to other available methods for the fair and efficient adjudication of the controversy.

IX.   RULE 23(b)(3) CLASS ACTION ALLEGATIONS ("right to work")

81.   The class of persons that the Hernandez plaintiffs seeks to represent under Rule 23(b)(3), Fed.R.Civ.P., for declaratory, injunctive, and compensatory relief under Ga.Gen.Stat. §§34-6-21 and 34-6-27 consists of all alien or formerly alien workers who were and/or are jointly or severally recruited, hired, transported, and/or employed by one or more of the named defendants at any time in the four (4) year time period immediately preceding the date on which this action was filed to perform any agricultural labor in Georgia for one or more the Bland defendants within that same four (4) year time period pursuant to a labor certification and visa under the H2A program ("right to work" plaintiff class").   This "right to work" plaintiff class includes the following subclass:

(a)   those members of the "right to work" plaintiff class like named plaintiffs Ramos and Hernandez whom the Bland defendants and/or defendant ILMC declined to transfer from North Carolina to Georgia for employment under the H2A program in Georgia with one or more of the Bland defendants in the late fall and early winter harvest of onions in 2004, 2005, and 2006 in violation of Ga.Gen.Stat. §34-6-21.

82.   Upon  information  and  belief,  the  "right  to  work"
plaintiff  class  and  subclass  of  persons  both  consist  of  well  in
excess of 200 persons.

83.   Joinder  of  all  "right  to  work"  plaintiff  class  and
subclass  members  would  be  impracticable  if  not  impossible  based
upon  the  extreme  geographic  dispersion  of  the  putative  class  and
subclass  members  within  and  without  the  state  of  Georgia,
including  at  least  one  country  other  than  the  United  States  of
America,  and  by  the  language  barriers  imposed  by  the  inability  of
a  significant  number  of  those  class  and  subclass  members  to  speak
English.

84.   The  questions  of  law  or  fact  which  are  common  to  the
Hernandez  plaintiffs  and  the  members  of  the  "right  to  work"
plaintiff  class  and  subclass  and  which  predominate  over  any  other
questions  affecting  the  individual  members  of  that  class  and
subclass  under  Rule  23,  Fed.R.Civ.P.,  are:   (a)   As  part  of  the
hiring,  recruiting,  transportation,  and  employment  process  to  fill
those  agricultural  jobs  in  Georgia  for  which  one  or  more  of  the
Bland  defendants  and  defendant  ILMC  received  an  H2A  labor
certification  to  hire  and  employ  H2A  workers  in  Georgia  to  work
for  one  or  more  of  the  Bland  defendants  in  the  4-year  time  period
described  in  ¶81  above,  did  the  named  defendants  specified  in  ¶81
above  require  the  Hernandez  plaintiffs  and  the  members  of  the
"right  to  work"  plaintiff  class  and  subclass  that  the  Hernandez
plaintiffs  seek  to  represent  to  resign  from  or  to  refrain  from
membership  in  or  affiliation  with  the  a  labor  organization  -  the

Farm Labor Organizing Committee, AFL-CIO (FLOC)?  (b) If yes, did those actions described in ¶84(b) above occur in Mexico or at some physical location within the United States of America?  (c) If yes, does Ga.Gen.Stat. 34-6-21 have any legal effect in Mexico or any state in the United States outside Georgia?  (d) Upon information and belief, the named defendants do not have any unique defense(s) against the Hernandez plaintiffs or any member of the "right to work" plaintiff class and subclass that the Hernandez plaintiffs seek to represent with respect to the claim for relief under Ga.Gen.Stat. §34-6-21 alleged by the Hernandez plaintiffs and the members of the "right to work" plaintiff class and subclass in this action.

85.  The claims of the Hernandez plaintiffs who seek to represent the "right to work" plaintiff class and subclass are typical of the claims of that class and subclass of persons that the Hernandez plaintiffs seek to represent.  The Hernandez plaintiffs and the "right to work" plaintiff class and subclass both allege that the named defendants breached the statutory prohibition contained in Ga.Gen.Stat. §34-6-21 when they required the Hernandez plaintiffs and the members of the "right to work" plaintiff class and plaintiff subclass to resign or refrain from membership or affiliation with FLOC as a condition of employment under the H2A program with one or more of the Bland defendants in Georgia in the 4-year time period described in ¶81 above.

86.  The Hernandez plaintiffs and the "right to work" plaintiff class and subclass allege that this violation of

Ga.Gen.Stat. §34-6-21 occurred in Mexico and/or outside of Georgia when, pursuant to the instructions or with the knowledge and consent of one or more of the Bland defendants and defendant ILMC, the named defendants refused to recruit, hire, and/or employ and/or rescinded any decision to recruit, hire, and/or employ the Hernandez plaintiffs and the members of the "right to work" plaintiff class and subclass to perform any work in Georgia under the H2A program for one or more of the Bland defendants on account of the membership and/or affiliation of the Hernandez plaintiffs and the members of the "right to work" plaintiff class and subclass.

87.   As a result, the Hernandez plaintiffs and the "right to work" plaintiff class and subclass allege that they suffered damages in the form of lost employment at the wage rate and for the hours of work that one or more of the named defendants had agreed to pay them if they had been hired and employed to work pursuant to the H2A program in Georgia pursuant to the Agricultural and Food Processing Clearance Orders submitted by the Bland defendants, ILMC, and the Eurys.

88.   The Hernandez plaintiffs will fairly and adequately represent the interests of the "right to work" plaintiff class and subclass of persons.

89.   The undersigned counsel Robert J. Willis and Brian Spears for the Hernandez plaintiffs are experienced litigators who have been named counsel for several class actions.

90. The prosecution of separate actions by individual members of the "right to work" plaintiff class and subclass under Ga.Gen.Stat. §§34-6-21 and 34-6-27 based upon the statutory violation alleged in ¶¶85-87 above would create a risk of inconsistent or varying adjudications with respect to individual members of the "right to work" plaintiff class and subclass which would establish incompatible standards of conduct for the named defendants with respect to the statutory violation of Ga.Gen.Stat. §§34-6-21 and 34-6-27 that is alleged in ¶¶85-87 above.

91. In addition, questions of law and fact common to the named plaintiffs and members of both the "right to work" plaintiff class and subclass predominate over any questions affecting only individual members, and a class action with respect to both the "right to work" plaintiff class and subclass is superior to other available methods for the fair and efficient adjudication of the controversy.

X.   FACTUAL ALLEGATIONS

92. The Hernandez plaintiffs, the similarly situated employees of the defendants that are described in ¶¶52-55 above and the contract plaintiff classes defined in ¶58 above were and/or are jointly and severally employed to perform agricultural labor by the named defendants in and around one or more of the counties that are listed in 28 U.S.C. §90(c) in the State of Georgia for at least the first workweek that they performed any work for one more of the Bland defendants in the planting and harvest of onions in the late fall and early winter and late

spring and early summer time periods that fell in the time periods that are set forth in ¶¶52 and 58 above of this complaint.

93.    The onion planting and onion harvest work described in ¶92 above occurred during the first workweek after one or more of the Hernandez plaintiffs and the similarly situated workers described in ¶¶52-55 and the members of the contract plaintiff class defined in ¶58 arrived in Georgia after they had been transported from Mexico to Georgia to perform that work in one more of the counties listed in 28 U.S.C. §90(c) for one or more of the Bland defendants

94.    For each onion planting and onion harvest season that occurred in Georgia in the time period from 1 January 2003 up to October 1, 2004 on property owned or controlled by one or more of the Bland defendants in one or more of the counties listed in 28 U.S.C. §90(c), one or more of the Bland defendants made a written job offer in the form of an Agricultural and Food Processing Clearance Order ("Clearance Order") under 20 C.F.R. Part 655 to one or more of the Hernandez plaintiffs and each member of the plaintiff classes and subclasses defined in ¶¶52-55, 58, 69, and 81 above to perform the work described in ¶¶92-93 above for one or more of the Bland defendants for the late fall and early winter planting of onions and for the spring and early summer harvest of onions.   For the time period on and after October 1, 2004 to the present, one or more of the Bland defendants and defendant ILMC made a written job offer in the form of an Agricultural and Food Processing Clearance Order ("Clearance Order") under 20 C.F.R.

Part 655 to one or more of the Hernandez plaintiffs and each member of the plaintiff classes and subclasses defined in ¶¶52-55, 58, 69, and 81 above to perform the work described in ¶¶92-93 above for one or more of the Bland defendants for the late fall and early winter planting of onions and for the spring and early summer harvest of onions.

95.   A true and correct copy of some of those Clearance Orders job offers (either with or without the "addendums" referred to in the text of those Clearance Orders) with anticipated periods of employment that occurred in 2004, 2005, and 2006 are attached to this complaint marked as Plaintiff's Exhibits 1 and 2.

96.   Among other terms, each of those same Clearance Order job offers contained the terms that are described in 20 C.F.R. §§655.103(b), §§655.102(a), 655.102(b)(6), 655.102(b)(9), and 655.102(c), incorporating, among other employment-related laws, Ga.Gen.Stat. §§34-6-21.

97.   Based upon the inability of the ILMC to recruit sufficient U.S. workers in for the late fall and early winter planting of onions in 2003, and the planting and harvest of onions in 2004, 2005, and 2006 through the circulation of Clearance Orders like Plaintiff's Exhibits 1 and 2 attached, the U.S. Department of Labor ("DOL") granted the NCGA and/or the ILMC, and one or more of the Bland defendants written certifications to employ Mexican nationals to perform that agricultural work in Georgia under the H2A program in 2003, 2004, 2005, and/or 2006.

98. On instructions from or by decision of defendant ILMC and/or one or more of the Bland defendants, CSI, MOA, ILMC, and one or more of the Bland defendants declined to recruit, declined to hire, declined to employ, and/or rescinded a decision to recruit, hire, and/or employ all of the Hernandez plaintiffs except plaintiff Martinez, the members of the "right to work" contract plaintiff class defined in ¶69 above, and the members of the "right to work" class defined in ¶81 above for onion planting under the H2A program work with one or more of the Bland defendants in Georgia in the late fall and early winter of 2005 on account of the requirement of the ILMC and/or one or more of the Bland defendants that CSI, MOA, ILMC, and one or more of the Bland defendants was not to recruit, hire, and/or employ any worker under the H2A program for employment with one or more of the Bland defendants if that worker was a member of or affiliated with FLOC.

99. As a direct and proximate result of the actions of the defendants that are alleged in ¶98 above, the Hernandez plaintiffs, the members of the "right to work" contract plaintiff class defined in ¶69 above, and the members of the "right to work" plaintiff class defined in ¶81 above suffered actual damages in the form of the lost wages that they would have earned in H2A employment with one or more of the Bland defendants in the late fall and early winter of 2005.

100. In March and/or April 2006, each of the Hernandez plaintiffs was recruited and hired by defendant CSI and/or some other business entity owned and operated by Bell, defendant MOA,

and/or defendant CSI in Mexico for H2A employment with one or more
of the Bland defendants in the harvest of onions in Georgia.   As
part of that recruitment and hiring process, each of the Hernandez
plaintiffs paid approximately $390 dollars in transportation, visa
fees, and recruiting fees to defendant CSI, defendant MOA, and/or
some   authorized   employee   or   agent   of   defendant   CSI   and/or
defendant   MOA,   and/or   some   other   business   entity   owned   and
operated by defendants MOA and/or CSI.   In addition, each of the
Hernandez   plaintiffs   obtained   loans   to   cover   their   travel   and
temporary   living   expenses   in   Georgia   while   they   were   employed
under the H2A program in 2006 of approximately $700 with payback
rates of 15% or 20%.

     101.  After   the   completion   of   the   initial   recruiting   and
hiring process described in ¶100 above (including payment of all
fees   and   incurring   loans   as   alleged   in   ¶100   above),   on
instructions from or by decision of the ILMC and/or one or more of
the   Bland   defendants,   defendants   CSI,   ILMC,   MOA,   and/or   one   or
more   of   the   Bland   defendants   declined   to   recruit,   declined   to
hire,   declined   to   employ,   and/or   rescinded   a   decision   to   recruit,
hire,   and/or   employ   the   Hernandez   plaintiffs,   the   members   of   the
"right to work" contract plaintiff class defined in ¶69 above, and
the members of the "right to work" class defined in ¶81 above for
onion harvest under the H2A program work with one or more of the
Bland defendants in Georgia in the late spring and early summer of
2006 on account of the requirement of the ILMC and/or one or more
of   the   Bland   defendants   that   CSI,   MOA,   ILMC,   and   one   or   more   of

the Bland defendants was not to recruit, hire, and/or employ any worker under the H2A program for employment with one or more of the Bland defendants if that worker was a member of or affiliated with FLOC.

102. As a direct and proximate result of the actions of the defendants that are alleged in ¶100-101 above, the Hernandez plaintiffs, the members of the "right to work" contract plaintiff class defined in ¶69 above, and the members of the "right to work" plaintiff class defined in ¶81 above suffered actual damages in the form of the lost wages that they would have earned in H2A employment with one or more of the Bland defendants in the late spring and/or early summer of 2006. The Hernandez plaintiffs have suffered special damages in the form of the debt, loan fees, and payments that are described in ¶100 above.

103. For each onion planting and harvest season alleged in ¶¶9(a)-(e) and 10(a)-(e) above the Hernandez plaintiffs accepted the written job offers that are described in ¶¶93-96 above and the terms that were contained in them, and traveled to Georgia from Mexico to perform and did perform agricultural work in Georgia for one or more of the Bland defendants pursuant to the H2A program in either the late fall and early winter planting of onions or the late spring and early summer harvest of onions.

104. For each onion planting and harvest season that fell in the time period from 1 September 2003 to the present, the members of the contract plaintiff class defined ¶58 above accepted the written job offers that are described in ¶¶93-96 above and the

terms that were contained in them, and traveled to Georgia from Mexico to perform and did perform agricultural work in Georgia for one or more of the Bland defendants pursuant to the H2A program in either the late fall and early winter planting of onions or the late spring and early summer harvest of onions.

105. For each onion planting and harvest season that fell in the time period from 1 September 2003 to the present in which one or more of the Hernandez plaintiffs and the members of the contract plaintiff class defined in ¶58 above traveled directly from Mexico to Georgia for employment by one or more of the Bland defendants under the H2A program in Georgia, the named defendants required each of the Hernandez plaintiffs and the members of the contract plaintiff class defined in ¶58 above to pay a total of approximately $370 to defendants CSI, ILMC, MOA, an agent(s) or employee(s) of MOA and/or CSI, and/or some other business entity that was and is owned and controlled by MOA and/or CSI for the cost of transportation, visa and border crossing fees, and recruiting fees to obtain the necessary H2A visa, recruiting services, and transportation required to work in the H2A program for one or more of the Bland defendants in Georgia during that same time period.

106. All of the transportation, visa and border crossing fees, and recruiting fees described in ¶105 above were primarily for the benefit of one or more of the Bland defendants, ILMC, CSI, and/or MOA.

107. For each onion planting and harvest season that fell in the time period from 1 September 2003 to the present, the named defendants did not reimburse the Hernandez plaintiffs and the members of the contract plaintiff class defined in ¶58 above for the costs of transportation, visa and border crossing fees, and recruiting fees paid by the Hernandez plaintiffs and the members of the contract plaintiff class defined in ¶58 above to obtain employment and the legally required H2A program visa to work for one or more of the Bland defendants in Georgia on or before the first regularly scheduled payday for the first workweek that the Hernandez plaintiffs and any member of the contract plaintiff class performed work for one or more of the Bland defendants in Georgia when they arrived in Georgia after their travel from Mexico to Georgia.

108. For each onion planting and harvest season that fell in the time period from 1 September 2003 to the present, the named defendants did not advance to the Hernandez plaintiffs and the members of the contract plaintiff class defined in ¶58 above for the costs of transportation, visa and border crossing fees, and recruiting fees paid by the Hernandez plaintiffs and the members of the contract plaintiff class defined in ¶58 above before the Hernandez to obtain employment and the legally required H2A program visa to work for one or more of the Bland defendants in Georgia on or before the first regularly scheduled payday for the first workweek that the Hernandez plaintiffs and any member of the contract plaintiff class performed work for one or more of the

Bland defendants in Georgia when they arrived in Georgia after their travel from Mexico to Georgia.

109. The named defendants did not pay the Hernandez plaintiffs and the members of the contract plaintiff class defined in ¶58 above all their wages when they were due on or before the regularly scheduled pay day for the first workweek that fell within the four (4) year time period immediately preceding the date on which this action was filed at the adverse effect wage rate ("AEWR") described in item #9 of each NCGA Clearance Order, 20 C.F.R. §§655.102(b)(9) and 655.107 and the minimum rate required by 29 U.S.C. §206(a) for the work that those persons performed in at least the first workweek that they were employed to perform any agricultural work in Georgia for one or more of the Bland defendants when they arrived in Georgia after traveling from Mexico to Georgia.

110. The failure of the named defendants to pay the wages when due at the rates specified in ¶109 above occurred because: (a) of the *de facto* wage deduction described in ¶¶105-108 above for the expenses and fees that the Hernandez plaintiffs and that same plaintiff contract class had to pay to enable one or more of the Bland defendants and/or ILMC to employ the Hernandez plaintiffs and that same contract plaintiff class under the "H2A program", and (b) the gross wages that one or more of the Bland defendants and defendant ILMC owed and actually paid to the Hernandez plaintiffs and that same contract plaintiff class under the FLSA and the AEWR for at least the first workweek described in

¶¶108-09 above for the actual hours of agricultural labor performed by the Hernandez plaintiffs and that same contract plaintiff class in at least that same first workweek was much less than the amount that the Hernandez plaintiffs and the contract plaintiff class paid for the visa, border crossing, transportation, and recruiting fees and expenses that are described in ¶¶105-08 above of this Complaint.

111. Based at least in part on the terms of the Agricultural and Food Processing Clearance Orders and job offers described in ¶¶94-96 above that were accepted by the Hernandez plaintiffs, each member of the contract plaintiff class defined in ¶58 above during all of those same workweeks described in ¶¶9(a)-(e), 10(a)-(e), 58, and 92 above, the Hernandez plaintiffs and each member of the contract plaintiff class defined in ¶58 above had and have an express, implied, or constructive agreement with the Bland defendants and defendant ILMC that one or more of the Bland defendants would compensate them, free and clear, at the higher of the minimum rate required by federal or state law or the AEWR (as defined by 20 C.F.R. §§653.102(b)(9) and 655.107) for any actual hours of work that one or more of the Hernandez plaintiffs and the members of that contract plaintiff class worked in at least the first workweek that the Hernandez plaintiffs or any member of that same contract plaintiff class performed any work in Georgia for one or more of the Bland defendants when they had arrived after traveling from Mexico to Georgia.

112. By failing to make the wage reimbursements or advance payments for the costs and fees described in ¶¶105-08 above, the Bland defendants and defendant ILMC did not comply with the express, implied, and/or constructive agreement described in ¶111 above. By failing to comply, the named defendants have failed to pay the Hernandez plaintiffs and the contract plaintiff class all of the wages the Hernandez plaintiffs and that same class were, are and will be due when those wages were due in breach of the contractual agreement described in ¶¶94-96 and 111 above.

113. Based at least in part on the terms of the Agricultural and Food Processing Clearance Orders and job offers described in ¶¶73-74 and 94-96 above that that were tendered to the Hernandez plaintiffs and each member of the "right to work" contract plaintiff class defined in ¶69 above during all of those same workweeks described in ¶¶69, 92, 98, and 100-01 above, the named defendants had and continue to have a contractual obligation to the Hernandez plaintiffs and each member of the "right to work" contract plaintiff class defined in ¶69 above to comply with all of the requirements described in 20 C.F.R. §§655.102(a), 655.103(b), 655.102(b)(6), 655.102(b)(9), and 655.102(c), incorporating Ga.Gen.Stat. §§34-6-21, to use only bona fide occupational qualifications for the H2A agricultural jobs available through the named defendants with one or more of the Bland defendants in Georgia, and to provide at least the same level of minimum benefits and working conditions to the Hernandez plaintiffs and the members of the "right to work" contract

plaintiff class as must be offered to U.S. workers with regard to any work under the H2A program for one or more of the Bland defendants in Georgia that was the subject of any agricultural clearance order job offer for which the ILMC, MOA, and/or CSI hired or recruited or will hire or will recruit any worker for one or more of the Bland defendants in the time period described in ¶69 above.

114. By failing to comply with the contractual obligations described in ¶¶73-74, 94-96, and 111 above, the named defendants, did not comply with the express, implied, and/or constructive agreement described in ¶111 above. By failing to comply, the named defendants were, are and will be in breach of the contractual obligations described in ¶¶73-74, 94-96 and 111 above.

115. The discriminatory actions of the named defendants that are complained of in ¶¶84-87, 98 and 100-01 above in violation of Ga.Gen.Stat. §34-6-27 are ongoing and are capable of repetition yet evading review.

XI.   FIRST CLAIM FOR RELIEF ("right to work" – §34-6-27)

116. Paragraphs 1 through 115 above are realleged and incorporated herein by reference by the Hernandez plaintiffs and each member of the "right to work" plaintiff class defined in ¶57 above that the Hernandez plaintiffs seek to represent pursuant to Rule 23(b)(3), Fed.R.Civ.P., against all named defendants.

117. The named defendants violated the rights of the Hernandez plaintiffs and the members of the "right to work" plaintiff class defined in ¶81 above of this complaint that the

Hernandez plaintiffs seek to represent under Rule 23(b)(3), Fed.R.Civ.P., in the recruiting and hiring process in Mexico that is described in ¶¶84-87, 98, and 100-01 above of this Complaint for employment by one or more of the Bland defendants in Georgia for the time periods described in ¶¶81, 84-87, 92, 98, and 100-01 in violation of the statutory prohibition contained in Ga.Gen.Stat. §34-6-21.

118. As a result of these actions of the named defendants in violation of the rights of the Hernandez plaintiffs and each member of the "right to work" plaintiff class defined in ¶81 above under Ga.Gen.Stat. §34-6-21, the Hernandez plaintiffs and each person who is a member of the "right to work" plaintiff class defined in ¶81 above of this complaint has suffered and/or will suffer damages in the form of lost wages for the number of hours of work at the rate of pay guaranteed by those provisions of the clearance order job offer by ILMC, one or both of the Eurys, and one or more of the Bland defendants which are described in 20 C.F.R. §655.102(b)(6), 655.102(b)(9), and 653.501(d)(2)(v)(A), and those special damages that are described in ¶102 above that may be recovered under Ga.Gen.Stat. §34-6-27.

119. The discriminatory and illegal actions of the named defendants that are referred to and alleged in ¶118 above are both ongoing and capable of repetition yet evading review. Therefore, the Hernandez plaintiffs and the "right to work" plaintiff class defined in ¶81 above are entitled to injunctive relief under Ga.Gen.Stat. §34-6-27 against all of the named defendants to

prohibit any repetition of the illegal conduct that is described and alleged in ¶¶84-87, 98, and 100-01 above of this Complaint.

XII.  SECOND CLAIM FOR RELIEF (contract "right to work")

120. Paragraphs 1 through 119 above are realleged and incorporated herein by reference by the Hernandez plaintiffs and each member of the "right to work" contract plaintiff class defined in ¶69 above that the Hernandez plaintiffs seek to represent pursuant to Rule 23(b)(3), Fed.R.Civ.P., against all named defendants.

121. The named defendants violated the rights of the Hernandez plaintiffs and the members of the "right to work" contract plaintiff class defined in ¶69 above of this complaint that the Hernandez plaintiffs seek to represent under Rule 23(b)(3), Fed.R.Civ.P., in the recruiting and hiring process in Mexico that is described in ¶¶69, 72-75, 98, and 100-01 above of this Complaint for employment by one or more of the Bland defendants in Georgia for the time periods described in ¶¶69, 72-75, 92, 98, and 100-01 in violation of the contractual obligations and prohibitions contained in the clearance order job offer that are described in ¶96 above which incorporate, among other statutory employment obligations, that contained in Ga.Gen.Stat. §34-6-21.

122. As a result of these actions of the named defendants in violation of the rights of the Hernandez plaintiffs and each member of the "right to work" contract plaintiff class defined in ¶69 above under the terms of the clearance order job offers from

the ILMC and one or more of the Bland defendants that are described in ¶96 above, the Hernandez plaintiffs and each person who is a member of the "right to work" contract plaintiff class defined in ¶69 above of this complaint has suffered and/or will suffer damages in the form of lost wages for the number of hours of work at the rate of pay guaranteed by those provisions of the clearance order job offer by ILMC and one or more of the Bland defendants which are described in 20 C.F.R. §655.102(b)(6), 655.102(b)(9), and 653.501(d)(2)(v)(A), and those special damages that are described in ¶102 above that may be recovered under Ga.Gen.Stat. §34-6-27.

XIII. THIRD CLAIM FOR RELIEF (Contract)

123. Paragraphs 1 through 122 above are realleged and incorporated herein by reference by the Hernandez plaintiffs and each member of the contract plaintiff class defined in ¶58 above of this complaint that the Hernandez plaintiffs seek to represent pursuant to Rule 23 (b)(3), Fed.R.Civ.P., against ILMC and the Bland defendants under the common law of employment contracts.

124. Defendants ILMC and the Bland defendants breached the express, implied, and/or constructive contract described in ¶¶94-96, 103-04, and 111 above when those same named defendants did not pay and will not pay all wages due when those wages were and will be due under the terms of that same contract to the Hernandez plaintiffs and the members of the contract plaintiff class defined in ¶58 above of this complaint that the Hernandez plaintiffs seek to represent under Rule 23(b)(1)(A), or, in the alternative, Rule

23(b)(3), Fed.R.Civ.P., for the work described in ¶¶93-94 above of this Complaint based upon the actions or omissions described in ¶¶106-111 above of this Complaint.

125. As a result of the actions or omissions of defendants ILMC and the Bland defendants that are described or referred to in ¶124 above of this complaint, the Hernandez plaintiffs and each person who is a member of the contract plaintiff class defined in ¶58 above of this complaint have suffered damages in the form of unpaid wages that may be recovered under the common law of contracts.

XIV. <u>FOURTH CLAIM FOR RELIEF (FLSA against all defendants)</u>

126. Paragraphs 1 through 125 above are realleged and incorporated herein by reference by the Hernandez plaintiffs and each member of the FLSA plaintiff collective defined in ¶¶52-55 above of this complaint that the Hernandez plaintiffs seek to represent pursuant to 29 U.S.C. §216(b) against all named defendants under the FLSA.

127. The named defendants did not pay the Hernandez plaintiffs and the FLSA plaintiff collective defined in ¶¶52-55 above that the Hernandez plaintiffs seek to represent under 29 U.S.C. §216(b) at the rate required by 29 U.S.C. §206(a) for the work described in ¶¶52-55, 92-93, and 103-110 above of this Complaint.

128. As a result of these willful actions of the named defendants in reckless disregard of the rights of the Hernandez plaintiffs and the FLSA plaintiff collective under 29 U.S.C.

§206(a), the Hernandez plaintiffs and each member of the FLSA plaintiff collective have suffered damages in the form of unpaid wages and liquidated damages that may be recovered under 29 U.S.C. §216(b).

XV.   CLAIM FOR DECLARATORY RELIEF

129. Paragraphs 1 through 128 above are realleged and incorporated herein by reference by the Hernandez plaintiffs and the four (4) classes of persons they seek to represent against the defendants defined above.

130. The parties and plaintiff classes named in this action are in dispute as to their respective rights, privileges, obligations, and liabilities under the Fair Labor Standards Act, the Georgia "Right to Work" Law, and the common law of contracts, and require declaratory relief as to what those respective rights, privileges, obligations, and liabilities are.

WHEREFORE Plaintiffs respectfully request that the Court:

(a)   Grant a jury trial on all issues so triable;

(b)   Certify the Hernandez plaintiffs as the representatives of the group of similarly situated employees of the defendants in a collective action for declaratory relief under 29 U.S.C. §216(b) of the Fair Labor Standards Act ("FLSA") against all defendants to the plaintiff's Claim for Declaratory Relief under the FLSA;

(c)   Pursuant to Rule 23(b)(3), Fed.R.Civ.P., certify the Hernandez plaintiffs as the representatives of the "right to work" contract plaintiff class defined in ¶69 above and the contract plaintiff class defined in ¶58 above in a class action for

declaratory relief under the common law of contracts against defendant ILMC and the Bland defendants with respect to the plaintiff's Claim for Declaratory Relief under the common law of contracts;

(d)   Pursuant to Rule 23(b)(3), Fed.R.Civ.P., certify the Hernandez plaintiffs as the representatives of the "right to work" plaintiff class defined in ¶81 above for declaratory relief with regard to the rights of the parties under Ga.Gen.Stat. §34-6-21 against all defendants;

(e)   Certify the Hernandez plaintiffs as the representatives of the group of similarly situated employees of the defendants in a collective action for back wages and liquidated damages pursuant to 29 U.S.C. §216(b) of the FLSA against all defendants, jointly and severally, with respect to the Fourth Claim for Relief under the FLSA by the Hernandez plaintiffs;

(f)   Pursuant to Rule 23(b)(3), Fed.R.Civ.P., certify the Hernandez plaintiffs as the representatives of the contract plaintiff class of persons defined in ¶58 above of this complaint in a class action for compensatory damages in the form of unpaid back wages against defendant ILMC and the Bland defendants, jointly and severally, with respect to the Third Claim for Relief under the common law of employment contracts by the Hernandez plaintiffs;

(g)   Pursuant to Rule 23(b)(3), Fed.R.Civ.P., certify the Hernandez plaintiffs as the representatives of the "right to work" contract plaintiff class defined in ¶69 above in a class action

for actual and special damages under the common law of contracts against defendant ILMC and the Bland defendants, jointly and severally, with respect to the Second Claim for Relief alleged by the Hernandez plaintiffs;

(h)   Pursuant to Rule 23(b)(3), Fed.R.Civ.P., certify the Hernandez plaintiffs as the representatives of the "right to work" plaintiff class of persons defined in ¶81 above of this complaint for actual and special damages against all named defendants, jointly and severally, for the defendants' violation of Ga.Gen.Stat. §34-6-21 under the First Claim for Relief alleged by the Hernandez plaintiffs;

(i)   Declare, as alleged in the Complaint, that defendants ILMC, CSI, MOA, and/or each of the Bland defendants have violated their obligations to the Hernandez plaintiffs, the similarly situated workers that the Hernandez plaintiffs seek to represent under the FLSA, and the four (4) plaintiff classes that the Hernandez plaintiffs seek to represent under: (i) the common law of employment contracts relating to the clearance order job offer and contract described in ¶¶94-96 and 103-104 above to pay the Hernandez plaintiffs and the contract plaintiff class defined in ¶58 above all wages when due at the rate required by the higher of the AEWR and/or by 29 U.S.C. §206(a) pursuant to the terms of the Agricultural and Food Processing Clearance Order job offer that is described in ¶¶94-96 above and 103-04 above; (ii) the common law of contracts with respect to the contract described in ¶¶94-96 and 103-04 above of the Complaint for the Hernandez plaintiffs and the

"right to work" contract plaintiff class defined in ¶69 above based upon the actions that are alleged or described in ¶¶69, 72-75, 98, and 100-01 above; (iii) the Fair Labor Standards Act, 29 U.S.C. §206(a) by failing to pay the Hernandez plaintiffs and the FLSA plaintiff collective at the minimum wage rate required by the FLSA in at least the first workweek that each member of the FLSA and contract plaintiff class defined in ¶¶52-55 and 58 above were employed by one or more of the named defendants when they arrived in Georgia after traveling from Mexico to Georgia, and (iv) §34-6-21 of the Georgia "Right to Work" Law based upon the actions that are described and alleged in ¶¶81, 84-87, 98, and 100-01 above;

(j)   Enter judgment against defendants ILMC and each of the Bland defendants, jointly and severally, and in favor of the Hernandez plaintiffs and each member of the contract plaintiff class ¶35 above for compensatory and special damages against defendants ILMC and each of the Bland defendants, jointly and severally, under the Third Claim for Relief in an amount equal to the total of the unpaid or underpaid AEWR wages that these same named defendants contracted to pay the Hernandez plaintiffs and each member of that same contract plaintiff class, jointly and severally, under the common law of contracts for the first work week in which the Hernandez plaintiffs or any member of that same contract plaintiff class performed the work in Georgia described in ¶¶9(a)-(e), 10(a)-(e), 58-63, 92-93, and 103-04 above of the Complaint after traveling from Mexico to Georgia, plus interest at the full amount allowed by law;

(k)   Enter judgment against all named defendants, jointly and severally, and in favor of the Hernandez plaintiffs and each member of the "right to work" plaintiff class defined in ¶81 above under Ga.Gen.Stat. §34-6-27 against all named defendants, jointly and severally, under the First Claim for Relief in an amount equal to the actual and special damages suffered by the Hernandez plaintiffs and that same members of the "right to work" plaintiff class as a direct and proximate result of the actions described and alleged in ¶¶81, 84-87, 98, and 100-01, plus interest in the manner and at the highest rate prescribed by applicable law on those damages;

(l)   Enter judgment against defendants ILMC and each of the Bland defendants, jointly and severally, and in favor of the Hernandez plaintiffs and each member of the "right to work" contract plaintiff class defined in ¶69 above under the common law of contracts under the Second Claim for Relief in an amount equal to the actual and special damages suffered by the Hernandez plaintiffs and that same members of the "right to work" contract plaintiff class as a direct and proximate result of the actions described and alleged in ¶¶69, 72-75, 98, and 100-01, plus interest in the manner and at the highest rate prescribed by applicable law on those damages;

(m)   Enter judgment against all named defendants, jointly and severally, and in favor of the Hernandez plaintiffs and each member of the FLSA plaintiff collective who files a consent to sue at any time before judgment is entered in this action for unpaid

back wages pursuant to 29 U.S.C. §§206 and 216(b) against all named defendants, jointly and severally, pursuant to 29 U.S.C. §216(b) under the Fourth Claim for Relief in an amount equal to the total of the unpaid or underpaid wages due the Hernandez plaintiffs and each member of the FLSA and NCWHA plaintiff subclass, jointly and severally, under the Fair Labor Standards Act, 29 U.S.C. §§201 et seq. for the work described in ¶¶9(a)-(e), 10(a)-(e), 52-56, 92-93, and 103-04 above for the first work week in which the Hernandez plaintiffs or any member of the FLSA plaintiff collective performed that same work, plus an equal amount in liquidated damages under 29 U.S.C. §216(b);

(n) Enter judgment against all named defendants, jointly and severally, and in favor of the Hernandez plaintiffs and all members of the FLSA plaintiff collective and four (4) other classes that the Hernandez plaintiffs seek to represent for the costs of this action under 29 U.S.C. §216(b) and Ga.Gen.Stat. §34-6-27;

(o) Enter judgment against all named defendants, jointly and severally, and in favor of the Hernandez plaintiffs and all members of the FLSA plaintiff collective and four (4) other classes that the Hernandez plaintiffs seek to represent for reasonable attorney fees under §216(b) and Ga.Gen.Stat. §34-6-27;

(p) Award prejudgment and post judgment interest at the highest amount authorized by applicable law on any amount of monetary damages awarded for back wages as requested in paragraphs

(j)-(l) above of this Prayer for Relief based upon such date(s) as may be appropriate under applicable law;

(q)   Award such other relief as may be just and proper in this action.

This the 23rd day of September, 2006.

BRIAN SPEARS, GA Bar #670112
1126 Ponce de Leon Ave.
Atlanta, GA 30306
Tele:  (404) 872-7086
Fax:  (404) 892-1128

/s/Robert J. Willis
Attorney for Plaintiffs
NC Bar #10730
P.O. Box 1269
Raleigh, NC  27602
Telephone: (919)821-9031
Fax: (919)821-1763
E-mail: rwillis@rjwillis-law.com
Appearing *Pro Hac Vice* As Co-Counsel
for Plaintiff and Appearing *Pro Hac Vice* pursuant To LR 83.4(b), SDGa