UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

NICOLAS RAMOS-BARRIENTOS, et al.,

Plaintiffs,

v.                    606CV089

DELBERT C. BLAND, et al.,

Defendants.

## ORDER

## I. INTRODUCTION

This case arises from the temporary employment of Mexican farm workers through the Department of Labor's ("DOL") H-2A program. The Defendants, Delbert C. Bland and Bland Farms, LLC (collectively "Bland Farms") hired the Plaintiffs and other H-2A guest workers in their onion planting and harvesting operations in and around Glennville, Georgia during the 2001 to 2006 seasons. Doc. # 118 at 1-2. Plaintiffs have brought a claim under the Fair Labor Standards Act ("FLSA") for unpaid wages. Doc. # 73. Plaintiffs have also brought a number of state law claims, including breach of contract and violation of Georgia's Right to Work Law. *Id.* Defendants have moved the Court for summary judgment, doc. # 169, and Plaintiffs have moved to strike affidavits relied upon by Defendants in their motion, doc. # 176. This Order will address both motions.

## II. BACKGROUND

Bland Farms is a Georgia limited liability company based in Glennville, Georgia. Doc. # 170 at 3. Bland Farms imports workers under the DOL's H-2A temporary visa program to assist in the planting of its onion crop in the fall of each year and the harvest of its onion crop in the spring. *Id.* The H-2A

program allows the temporary employment of alien farm workers within the U.S. if an employer can show that (1) there are insufficient domestic workers who are willing, able, and qualified to perform the work at the time and place needed, and (2) the employment of aliens will not adversely affect the wages and working conditions of domestic workers. *See* 8 U.S.C. §§ 1184(c)(1), 1188(a)(1). Federal regulations establish the conditions under which these alien workers are permitted to work in the U.S. An employer must compensate H-2A workers at a rate not less than the federal minimum wage, the prevailing wage rate in the area, or the "adverse effect wage rate" ("AEWR"),[1] whichever is higher. *See* 20 C.F.R. § 655.102(b)(9).

If an expense incurred by the H-2A worker is determined to be "primarily for the benefit of the employer," the employer must reimburse the employee during the first workweek in which the expense arose up to the amount needed to comply with the federal minimum wage laws. *Arriaga v. Fla.-Pac. Farms, LLC*, 305 F.3d 1228, 1237 (11th Cir. 2002). Expenses deemed "primarily for the benefit of the employer" may include transportation costs from the worker's home country to the place of employment, visa costs, visa application fees, and immigration fees for entry documents. *Id.* at 1242, 1244.

When employers apply to the DOL for admission of H-2A workers, they are required to fill out an application, also referred to as a "clearance order." In the clearance order, the employer certifies that "[t]his job order describes the actual terms and conditions of the employment being offered by me, and contains all the material terms and conditions

---

[1] The AEWR is the minimum wage rate that the DOL determines is necessary to ensure that wages of similarly-situated domestic workers will not be adversely affected by the employment of H-2A workers. *See* 20 C.F.R. §§ 655.100(b), 655.107.

of the job." 20 C.F.R. § 653.501(d)(3). The clearance order eventually becomes the contract between the employers and the farm workers. *Arriaga*, 305 F.3d at 1233 n.5.

Beginning with the spring harvest season of 2002, and ending with the spring harvest season of 2007, Bland Farms contracted with International Labor Management Corporation ("ILMC"), formerly a co-defendant in this action, to assist Bland Farms in obtaining agricultural clearance orders. Doc. # 170 at 3. ILMC offered Bland Farms a turnkey program whereby ILMC would perform "all aspects of crafting/modifying [Bland's] work agreements, [and] all interactions with the various branches of government including the visa application process with [the Immigration and Naturalization Service]." Doc. # 169-4 at 8 (Exhibit A to Sloan Lott's Affidavit). ILMC subcontracted this work to Manpower of the Americas ("MOA"), a private employment service agency. Doc. # 170 at 8. In 2003, MOA was replaced by Consular Services International ("CSI"). *Id.* at 8 n.6.[2]

Plaintiffs in this case, H-2A workers who were employed by Bland Farms, brought this case as a collective action under 29 U.S.C. § 216(b) of the FLSA and as a class action under the common law of contracts.[3] Doc. # 73 at 1-2 (Third Amended Complaint).

The first claim for relief in Plaintiffs' Third Amended Complaint alleges that Bland Farms violated Georgia's Right to Work Law, O.C.G.A. § 34-6-21 *et seq.*, by barring Plaintiffs and other union members from

employment with Bland Farms because of their union status. Doc. # 73 at 52-53.

Plaintiffs' second claim for relief is largely duplicative of the first. *Id.* at 53-55. This claim, however, is one for breach of contract premised on Bland Farms' promise in the clearance order to comply with all employment-related laws (which implicitly includes Georgia's Right to Work Law). *Id.*

Plaintiffs' third claim for relief is also a breach of contract claim, wherein they allege that Defendants have violated the terms of the clearance order, which, *inter alia*, promised (1) compliance with all employment-related laws, (2) reimbursement for all inbound transportation expenses, and (3) payment of wages on a weekly basis for all of their H-2A employees at a minimum wage rate equal to the AEWR published by the U.S. Department of Labor on an annual basis. *Id.* at 55-56.

Plaintiffs' fourth and final claim for relief is brought pursuant to the FLSA's wage and hour provisions. Specifically, Plaintiffs contend that Bland Farms failed to reimburse them within the first workweek, or within a reasonable time thereafter, for expenses Plaintiffs incurred that were "primarily for the benefit of the employer" under the analysis adopted by the Eleventh Circuit in *Arriaga*. *Id.* at 56-57.

Defendants have moved for summary judgment on the first, second, and fourth claims for relief in Plaintiffs' Third Amended Complaint and for partial summary judgment on Plaintiffs' third claim for relief. Doc. # 169.

Plaintiffs, meanwhile, have moved, pursuant to F.R.Civ.P. 56(e) and 26(a)(1)(A)(i), to strike the affidavits that Defendants have relied upon in support of their motion for summary judgment. Doc. # 176.

---

[2] CSI, MOA, and their owner, Michael Bell, are also defendants in this action. Michael Bell was served on 12/20/07, doc. # 66, and has allowed default judgment to be entered against him, doc. # 72.

[3] On 11/17/09, the Court conditionally certified Plaintiffs' case as an FLSA collective action under 29 U.S.C. § 216(b) but denied Plaintiffs' motion for F.R.Civ.P. 23 class certification. Doc. # 209.

The Court hereby enters this consolidated Order to resolve both Plaintiffs' motion to strike, *id.*, and Defendants' motion for summary judgment, doc. # 170. Because resolution of evidentiary issues in Plaintiffs' motion will influence the evidence to be considered at the summary judgment stage, the Court addresses the motion to strike first.

## III. MOTION TO STRIKE

The Court will address the objections in Plaintiffs' motion to strike in numerical order, as listed in Plaintiffs' motion. Doc. # 176.

### 1. Affidavit of Jack Eugene Gibson – Paragraphs Five and Seven

Plaintiffs object to paragraphs five and seven of Jack Eugene Gibson's affidavit,[4] doc. # 169-3 at 2, 5-6, contending that Mr. Gibson appraises employee housing that was constructed in 2007, after the time in which the Plaintiffs' claims arose. Doc. # 176 at 1-2. Because Plaintiffs never lived in that housing, they urge that the cost of that housing is irrelevant to this case. Defendants have conceded this point, doc. # 189 at 2, and have since filed a new expert affidavit offering the opinion of Mr. Gibson as to the fair rental value of the housing units in use during the relevant seasons. Doc. # 189-1. Plaintiffs, however, object to this new affidavit as well, noting that the deadline set by this Court for filing expert reports was 12/26/08. Doc. ## 111 at 2 (amended scheduling order); 194 at 1-4 (objection to Mr. Gibson's second affidavit). The revised expert report was filed on 5/18/09. Doc. # 189-1.

"Under [F.R.Civ.P.] 26, all parties must disclose expert opinion reports when directed by the court, or at least ninety days before

trial." *Cooper v. S. Co.*, 390 F.3d 695, 728 (11th Cir. 2004), overruled on other grounds, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006). "Notice of the expert witness' name is not enough. Each witness must provide a written report containing 'a complete statement of all opinions to be expressed and the basis and reasons therefor....'" *Prieto v. Malgor*, 361 F.3d 1313, 1317-18 (11th Cir. 2004) (quoting F.R.Civ.P. 26(a)(2)(B)). A party "that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) ... is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness or information not so disclosed." F.R.Civ.P. 37(c)(1). The Court, however, retains discretion to permit a party to submit an expert report after the discovery deadline when the opposing party is given time to prepare a response and suffers no prejudice. *See Ferguson v. Bombardier Servs. Corp.*, 244 Fed. Appx. 944, 950 (11th Cir. 2007) (finding no prejudice when party opposing evidence had eight months before trial to prepare for testimony).

While the Defendants here have not willfully disobeyed the Court's discovery order, the Court recognizes that Plaintiffs would be prejudiced if they are not provided an opportunity to conduct discovery with respect to Mr. Gibson's new opinion. The Court thus strikes the affidavit from consideration when ruling on Defendants' motion for summary judgment.

However, because establishing the cost of housing may be necessary for this case to advance, the Court will permit Defendants to enter Mr. Gibson's new affidavit into evidence after they provide Plaintiffs with an opportunity to depose Mr. Gibson. Objection one is sustained.

---

[4] Mr. Gibson, a licensed real estate agent, real property appraiser, and a certified general real property appraiser, was retained as an expert by Defendants to determine an estimated market rent for employee housing provided by Bland Farms. Doc. # 169-3 at 1-2.

### 2. Affidavit of Therese Bouwense – Paragraph Nine

Plaintiffs object to paragraph nine of Therese Bouwense's affidavit,[5] doc. # 169-5 at 16,[6] in which she calculates Bland Farms' cost of providing housing to employees based on Defendants' accounting records, which are found at exhibits seventeen and eighteen to the affidavit, doc. # 169-7 at 10-43. Doc. # 176 at 2-3. Plaintiffs argue that these exhibits lack sufficient detail for Plaintiffs to determine the cost of actual housing provided to each individual Plaintiff. *Id.*

Bland Farms, however, is not required to keep records that would permit such a determination. *See* 29 C.F.R. § 516.27 ("Separate records of the cost of each item furnished to an employee need not be kept. ... The cost of maintenance, utilities, and repairs for all the houses may be shown together."). Plaintiffs cite to a DOL Handbook, which states that, when calculating the cost of housing for each worker, the cost of lodging should be prorated "[w]here the facility is used for other purposes, in addition to lodging." Field Operations Handbook of Department of Labor § 30c06(d)(3); doc. # 194 at 5. Plaintiffs, however, have provided no evidence that the labor camps were used for anything other than lodging. The Court therefore finds that Ms. Bouwense's testimony is relevant, supported by a proper foundation, and admissible. Objection two is overruled.

### 3. Affidavit of Therese Bouwense – Paragraph Seven

Plaintiffs object to the seventh paragraph of Ms. Bouwense's affidavit, doc. # 169-5 at 12-13, in which Ms. Bouwense describes her interactions with Nahum Ornelas, a former Bland Farms' recruiter. Doc. # 176 at 3-6. Plaintiffs argue that Bouwense's statement that "[Ornelas] would come back to me and review his notes with me regarding his contact with workers" is inadmissible hearsay. *Id.* This is simply not hearsay. It is not a "statement" made by someone other than the declarant, nor was it offered "to prove the truth of the matter asserted." *See* F.R.Evid. 801.

Additionally, Ms. Bouwense's statement that "[Ornelas] would supply [her] with handwritten notes" is not testimony regarding the content of the notes, as Bouwense made the statement merely to support her claim that she had personal knowledge that Ornelas was involved in recruiting. Doc. # 169-5 at 12-13.

Finally, Ms. Bouwense's statement that "[a]t least 4 months prior to the start of a harvest and/or planting season, [Ornelas] would begin to contact workers to see if they wanted to work at Bland" was made with sufficient personal knowledge to allow admission. *Id.* Objection three is overruled.

### 4. Therese Bouwense's Affidavit – Paragraph Seven (Second Objection)

On virtually identical grounds, Plaintiffs again object to paragraph seven of Ms. Bouwense's affidavit, *id.* at 12-13, in which she describes her interactions with Jose Lopez-Gomez – the Bland Farms recruiter who succeeded Ornelas. Doc. # 176 at 6. Objection four is overruled. *See supra* section III.3.

---

[5] Ms. Bouwense has been an employee in Bland Farms' accounting department since March 2004. In 2005, Bouwense became the direct contact between Bland Farms and ILMC and was given complete responsibility for overseeing Defendants' H-2A program. Doc. # 169-5 at 2.

[6] There are two paragraph nines in Ms. Bouwense's affidavit. Plaintiffs move to strike the second paragraph found at doc. # 169-6 at 16.

### 5. Therese Bouwense's Affidavit – Paragraph (4) in Paragraph Six

Plaintiffs object to paragraph (4) in paragraph six of Ms. Bouwense's affidavit, doc. # 169-5 at 11, in which she attests to the accuracy of a Spanish to English translation of documents signed by Plaintiffs and contained in exhibit fourteen to her affidavit, doc. # 169-6 at 57-58. Doc. # 176 at 8-11. Plaintiffs also object to the accuracy of the translation itself. *Id.* Defendants have indicated that they will accept the substitute translation that Plaintiffs have submitted. Doc. # 189 at 5. Objection five is sustained.

### 6. Affidavit of Therese Bouwense – Paragraph Eleven

Plaintiffs object to paragraph eleven of Ms. Bouwense's affidavit, doc. # 169-5 at 17-18, in which she states that Bland Farms had been the "sole employer" of H-2A workers employed at Bland Farms. Doc. # 176 at 9. Plaintiffs argue that F.R.Evid. 701 and 702 prohibit Ms. Bouwense from offering her opinion on a question of law *Id.* There is a legal question looming in this case as to whether other companies were "employers" of the Plaintiffs under the FLSA's definition of that term. *See infra* section IV.C.ii.

The facts in paragraph eleven upon which Ms. Bouwense's opinion is based are admissible. Her conclusion that Bland Farms is the "sole employer" is a closer question. The Court, however, has no reason to strike this testimony at the summary judgment stage as the Court will draw its own legal conclusions regardless of any purported legal opinion offered by Ms. Bouwense. Should this testimony somehow become relevant at trial, the Court will reevaluate the admissibility of this statement. Objection six is overruled.

### 7. Affidavit of Therese Bouwense – Paragraph Four

Plaintiffs object to the fourth paragraph of Ms. Bouwense's affidavit, doc. # 169-5 at 2-6, in which she offers her opinion and testimony as to what a 2002 agreement between Bland Farms and ILMC "expressly contemplated." Doc. # 176 at 10-11. Specifically, Ms. Bouwense testifies that the original 2002 agreement submitted to Bland Farms by ILMC was changed "to reflect the fact that ILMC would not be recruiting H-2A workers in Mexico." Doc. # 169-5 at 3. Plaintiffs claim that because Ms. Bouwense was not employed by Bland until 2004, she does not have sufficient personal knowledge to testify about contract negotiations that took place in 2002. Doc. # 176 at 10; *see* F.R.Evid. 602. The Court agrees and finds that because Ms. Bouwense was not present for the contract negotiations, she did not have sufficient personal knowledge to make the statement in question. *See Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (Under the "personal knowledge" standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that to which he testifies.). Objection seven is sustained.

### 8. Affidavit of Therese Bouwense – Paragraph Four (Second Objection)

Plaintiffs also object to paragraph four of Ms. Bouwense's affidavit, doc. # 169-5 at 2-3, to the extent that she compares the language of the contract purportedly proposed by ILMC in 2002 to the language of the contract that Bland Farms and ILMC actually executed. Doc. # 176 at 12-13. In her affidavit, Ms. Bouwense quotes language from the 2002 proposed contract and attaches a copy of that document as an exhibit. Doc. # 169-5 at 2-3, 20-25. Plaintiffs complain that Defendants have neither offered the original version of the 2002 proposed contract nor have they

5

established through a person with personal knowledge the existence and preparation of the document as required by F.R.Evid. 602, 803(6), 1002, and 1003. Doc. # 176 at 12-13.

F.R.Evid. 1002 requires that a party offer the "original writing" when trying to prove the contents of the writing. F.R.Evid. 1003, however, provides that "[a] duplicate is admissible to the same extent as an original unless (1) a question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate of the original." Plaintiffs have not raised any question as to the authenticity of the proposed 2002 contract, and the Court sees nothing unfair about permitting the submission of a duplicate, rather than the original.

As to whether the proposed 2002 contract is a "properly authenticated copy," F.R.Evid. 901 states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Here, Ms. Bouwense has attested under oath that the copy of the proposed 2002 contract is a "true and correct copy" of an original that was submitted to Bland Farms. Doc. # 169-5 at 3. While it is true that Ms. Bouwense may not have personal knowledge that it was submitted by ILMC to Bland Farms in 2002, the document is labeled "2002 ILMC Agstmt h2a.wps" which supports Ms. Bouwense's testimony that this was indeed a 2002 version of ILMC's H2-A contract. *Id.* at 24. The Court thus finds that there is sufficient evidence that the document in question is what Ms. Bouwense claims it to be – namely a version of a 2002 ILMC contract which Bland Farms never signed.[7] Because

the 2002 proposed contract is offered only as a basis of comparison to the agreements that were ultimately entered into, it is being offered for a non-hearsay purpose, and F.R.Evid. 802 and 803(6) do not apply. Objection eight is overruled.

### 9. Affidavit of Clarke Yearous – Paragraph Four

Plaintiffs object to paragraph four of Clarke Yearous' affidavit,[8] doc. # 169-9 at 2, in which he attests that Lee Wicker, President of ILMC, told him that there would be no "under-the-table charges," no "hidden fees that Bland Farms would have to pick up[,] and [that] there would be no unethical or unforeseen charges to [Bland Farms'] workers." Doc. # 176 at 13. Plaintiffs argue that this is inadmissible hearsay. *Id.* The statements attributed to Wicker, however, are not offered as proof of the matter asserted and thus not hearsay under F.R.Evid. 801(c). Rather, the statements are offered as proof that Mr. Yearous had no knowledge that ILMC or its agents would charge recruiting or visa processing fees to Bland Farms' workers. *See U.S. v. Parry*, 649 F.2d 292, 295 (5th Cir. 1981) ("Using an out-of-court utterance as circumstantial evidence of the declarant's knowledge of the existence of some fact, rather than as testimonial evidence of the truth of the matter asserted, does not offend the hearsay rule.").[9] Objection nine is overruled.

_____

[7] Plaintiffs provide evidence that the proposed contract included in Ms. Bouwense's affidavit was not "the first Agency and Indemnity Agreement" that Bland Farms received. Doc. # 194 at 7-8. Although that may be

true, it does not affect the Court's decision that the 2002 proposed contract is admissible as evidence of an alternative contract that Bland Farms could have executed.

[8] Mr. Yearous was the Chief Operations Officer for Bland Farms from 1999 until 2002. Doc. # 169-9 at 1.

[9] In *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to 10/1/81.

## 10. Affidavit of Sloan Lott - Paragraphs Three, Four, and Six Through Eleven

Plaintiffs object to paragraphs three, four, and six through eleven of Sloan Lott's affidavit,[10] doc. # 169-4 at 2-5. Doc. # 176 at 13. Mr. Lott was present during the conversation between Clarke Yearous and Lee Wicker and attests, in those paragraphs, that "Mr. Wicker told Mr. Yearous that there would be no charges to the workers." Doc. # 169-4 at 2-5. Plaintiffs claim that these paragraphs are inadmissible hearsay. Doc. # 176 at 13. Again, these statements are not hearsay and are offered as evidence that Bland Farms had no knowledge that ILMC or its agents would charge recruiting or visa processing fees to its workers. Objection ten is overruled.

## 11. Affidavit of Sloan Lott – Paragraph Five

Plaintiffs object to the fifth paragraph of Mr. Lott's affidavit, doc. # 169-4 at 2-3, in which he describes the recruiting services provided by Ricardo Rodriguez to Bland Farms. *Id.* at 13. Plaintiffs' contend that Defendants' F.R.Civ.P. 26(a)(1)(A) discovery disclosure did not indicate that Mr. Lott would testify on this subject matter. *Id.* at 13.

Rule 26(a)(1)(A)(i) requires a party to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses...." F.R.Civ.P. 26(a)(1)(A)(i). "Indicating briefly the general topics on which such persons have information should not be burdensome, and will assist other parties in deciding which depositions will actually be needed."

---

[10] Mr. Lott was an "Operation Manager" from 2000 to 2002 and was subordinate to the Chief Operations Officer, Clarke Yearous.

Advisory Committee Notes to 1993 Amendment to F.R.Civ.P. 26(a). "The disclosure requirements should, in short, be applied with common sense in light of the principles of Rule 1, keeping in mind the salutary purposes that the rule is intended to accomplish. The litigants should not engage in gamesmanship with respect to the disclosure obligations." *Id.*

Here, Defendants disclosed the identity and contact information for Mr. Lott in a supplemental response to their Rule 26(a)(1)(A)(i) initial disclosure submitted on 12/2/08. Doc. # 189 at 7. The subjects of his knowledge were described as follows: "Mr. Lott has information concerning negotiations with ILMC representatives, and representations made by those representatives, with respect to services to be provided by ILMC and fees to be charged for those services." *Id.* Mr. Lott attests, "Ricardo Rodriguez agreed to [perform recruiting services for Bland Farms] without a charge to Bland, or the employees, in exchange for being allowed to provide the transportation services need by Bland Farms for all its [H-2A] workers." Doc. # 169-4 at 2-3

Plaintiffs argue that this is outside the scope of Mr. Lott's identified discoverable information because it deals with Defendants' business dealings with Mr. Rodriguez, which took place before Bland Farms began using ILMC's services in 2002. Doc. # 177 at 15. The Court agrees, and accordingly strikes the fifth paragraph of Mr. Sloan's affidavit from consideration at the summary judgment stage. Objection eleven is sustained.

## 12. Affidavit of Sloan Lott – Paragraph Seven

Plaintiffs object to the seventh paragraph of Sloan Lott's affidavit, doc. # 169-4 at 3-4, on the grounds that the statement, "North Carolina Grower Association members would benefit in that Bland would pay for all the

7

upfront costs, including transportation to get them there," constitutes either inadmissible hearsay or inadmissible lay opinion testimony. Doc. # 176 at 16-17. Even if this statement could be attributed to a third party, it does not constitute hearsay because it is not offered for the truth of the matter asserted. Rather, as Defendants claim, the statement is asserted to establish a course of conduct between Bland Farms and ILMC. *See U.S. v. Tokars*, 95 F.3d 1520, 1535 (11th Cir. 1996) (statements offered to explain a course of conduct do not constitute hearsay). The conclusion that splitting transportation costs with another employer would result in mutual beneficial relationship is sufficiently obvious to constitute lay opinion. Objection twelve is overruled.

In summary, Plaintiffs' motion to strike is granted in part and denied in part. Objections one, five, seven, and eleven are sustained. The remaining objections are overruled. The testimony pertinent to the sustained objections will not be considered by the Court when deciding Defendants' motion for summary judgment.

## IV. MOTION FOR SUMMARY JUDGMENT

As noted earlier, Bland Defendants have moved for summary judgment on the first, second, and fourth claims for relief in Plaintiffs' Third Amended Complaint and for partial summary judgment on the third claim for relief. Doc. # 170. Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(c). In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the

moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The moving party is "entitled to a judgment as a matter of law" when the nonmoving party fails to make a sufficient showing on an essential element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). The mere existence of a scintilla of evidence is insufficient; rather, there must be evidence on which reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### A. First Claim for Relief – Georgia's "Right to Work" Law

Plaintiffs claim that Bland Farms discriminated against union members in the recruiting and hiring of H-2A workers in violation of O.C.G.A. § 34-6-21, which provides that "no individual shall be required as a condition of employment or continuance of employment to be or remain a member or an affiliate of a labor organization or to resign from or to refrain from membership in or affiliations with a labor organization." Doc. ## 73 at 52-53; 179 at 3. That section of Georgia's Right to Work Law, however, does not afford Plaintiffs a private remedy. *See Sandt v. Mason*, 208 Ga. 541, 544-545 (1951) ("Neither the remedy of injunction ... nor the declaration that certain acts ... shall amount to a misdemeanor, is made applicable to [O.C.G.A. § 34-6-21], upon which the petitioners rely. ... [T]he provisions of [O.C.G.A. § 34-6-21] amount to no more than a statement of the public policy of this State."). Plaintiffs concede this point, doc. # 179 at 44, so Defendants' motion for summary judgment is granted as to Plaintiffs' first claim for relief. Doc. # 170.

## B. Second Claim for Relief – Contractual "Right to Work"

The merits of Plaintiffs' second claim for relief are duplicative of the first claim. Doc. # 73 at 53-55. The second claim, however, is premised on the conveyance order's promise to comply with all employment-related law, which includes O.C.G.A. § 34-6-21. *Id.* Because Plaintiffs' second claim for relief is separately grounded in common law contract, it sidesteps the problem that doomed Plaintiffs' first claim at its outset. *See supra* section IV.A.

Defendants contend that discovery has shown only one occasion when union workers were removed from Bland Farms' preferred worker list. Doc. # 170 at 4. This removal, Defendants suggest, was "the unilateral act of ILMC, was done for reasons to benefit ILMC, and … Bland Farms was not told of the removal or the reasons for the removal by ILMC." *Id.* Defendants' contention here is mostly derived from the testimony of Sarah Farrell, Vice-President of ILMC. In her deposition, Ms. Farrell explains that, before 2006, ILMC and the North Carolina Grower's Association ("NCGA") often transferred farm workers between employers who were members of NCGA and employers who were clients of ILMC, which, of course, included Bland Farms. Doc. # 167 at 25. On 9/16/04, the Farm Labor Organizing Committee ("FLOC") and NCGA signed a collective bargaining agreement wherein NCGA committed to hiring FLOC members. Doc. # 170 at 25. Eventually, ILMC became concerned that the transfer of workers between ILMC and NCGA might be "viewed by outside parties as an intermingling of the two companies,"[11] so ILMC ceased making

such transfers in 2006. Doc. # 167 at 21. As a result of the cease in transfers, ILMC removed workers who belonged to FLOC (including Plaintiffs) from Bland Farms' "preferred worker list" so that they would be free to work for NCGA members, pursuant to FLOC and NCGA's 9/16/04 collective bargaining agreement. Doc. # 170 at 25.

Ms. Farrell's deposition testimony indicates that ILMC's decision to remove Plaintiffs and other FLOC members from Bland Farms' preferred worker list was indeed unilateral:

> Q. Okay. Now, I won't ask you to search in vain for the names of the five plaintiffs from the list attached to 16 because they're not there, but basically what I want to ask you is do you have any idea why these workers' names were removed from the list?
> A. I think that they were removed from the list because [ILMC] made the decision not to transfer on the advice of counsel.
> Q. Okay. Now, was this a decision that Bland made?
> A. *No.*
> Q. Is there anywhere in this email correspondence that we've looked at where the nature of [ILMC]'s decision or reasons for it are communicated to Bland?
> A. *No*

Doc. # 167 at 20 (emphasis added).

Plaintiffs, meanwhile, argue that the removal of FLOC members from the preferred worker list was *not* ILMC's unilateral decision, and they emphasize that "the fact of that removal and the reasons for their removal" were communicated to Bland Farms

---

[11] Defendants' concern stemmed from unrelated litigation pertaining to discrimination in job placement. Doc. # 170 at 25. The complainant there alleged that ILMC impermissibly transferred her from a Michigan

vegetable processing company to a New York onion processor. *Id.*

via email on 3/1/06. Doc. # 179 at 45. In the 3/1/06 email, sent by Dorothy Schieler, an ILMC employee, to Therese Bouwense, Ms. Schieler identified three workers and advised that, "[T]he following workers are union members so I would strongly suggest not adding them to your worker list." Doc. # 170 at 27. Ms. Bouwense replied via email, "Please remove the union members and … replace them with substitutes. I appreciate you letting us know about the union members." *Id.* From this brief , Plaintiffs somehow extrapolate the following conclusion:

> [T]he Bland defendants had no reason to believe that ILMC would seek the approval of the Bland defendants to remove union members from future worker lists because ILMC had already removed the 3 union members involved in the first such removal on March 1, 2006 from the worker list of March 1, 2006 before ILMC obtained the express approval of the Bland defendants to do so on March 1, 2006. … Thus, because the Bland defendants never countermanded their March 1, 2006 approval of ILMC's removal of union members from the lists of workers provided by Bland Farms after March 1, 2006, ILMC had every reason to believe that it had the implicit approval of the Bland defendants to continue to automatically remove any union members from the lists of workers to be contacted by CSI and CSI's field agents in Mexico after March 1, 2006.

Doc. # 179 at 46-47. The Court is not sure whether counsel honestly believed this to be a clear and convincing argument, or whether he was simply hoping to confuse and distract the Court from the fact that the record lacks the

necessary evidence of direct involvement by Bland Farms.[12] Plaintiffs apparently contend that, by explicitly (via email) acquiescing to ILMC's suggested removal of the first group of union members, Bland Farms gave its implicit approval to any and all future removals of union workers, including the removal of five of the named Plaintiffs. This argument, however, is insufficient to survive summary judgment, as it rests upon mere supposition and, at best, a mere scintilla of evidence. Although Ms. Bouwense's acquiescence to Ms. Schieler's advice does give this Court some pause, the Court nonetheless finds that ILMC would have removed FLOC members from Bland Farms' preferred worker list regardless of whether it received express approval from Bland Farms. Moreover, even if Bland Farms' acquiescence to the removal of the three workers was for discriminatory reasons, there is still no evidence that the five named Plaintiffs were removed from the preferred workers list for a

---

[12] This, unfortunately, is one of the more coherent arguments that Plaintiffs' counsel makes in its pleadings. Subsequent pleadings were increasingly incomprehensible and required significant time for the Court to decipher. *See, e.g.*, doc. # 191 at 7 (Plaintiffs' reply brief) ("Bland Farms, LLC has testified by Therese Bouwense on November 18, 2008 that Bland Farms, LLC either did not whether the definition of 'recruiting' used by Bland Farms, LLC included at least one of the same six (6) services that are described above or specifically did not include some of those same six (6) services."). This is not the first time the Court has had difficulty understanding documents drafted by Plaintiffs' counsel. On 2/19/08, the Court directed counsel to "focus on breaking long sentences down into multiple sentences, and pruning excessive references in each paragraph." Doc. # 70 at 2. The Court further directed counsel to simply reference the document numbers assigned by the Court's docket (rather than spelling out the full title of the document) when citing to record documents. *Id.* at 2 n.1. As Plaintiffs' counsel seems to have lost sight of these two directives, the Court takes this opportunity to direct counsel's attention to F.R.Civ.P. 41(b) and S.D.Ga.L.R. 41.1(b), and to strongly suggest that counsel carefully read and edit any future pleadings filed with this Court.

similar reason.  Because nothing in the record shows that Bland Farms was directly involved in the decision to remove Plaintiffs and other FLOC members from its preferred worker list, Defendants cannot be held in violation of Georgia's Right to Work law.  O.C.G.A. § 34-6-21.  Defendants' motion for summary judgment is therefore granted as to Plaintiffs' second claim for relief.  Doc. # 169.

## C. Fourth Claim for Relief – FLSA

As mentioned before, Plaintiffs' fourth claim for relief, premised upon the FLSA's wage and hour provisions, alleges that Bland Farms failed to reimburse them within the first workweek, or within a reasonable time thereafter, for expenses Plaintiffs incurred that were "primarily for the benefit of the employer."  Doc. # 73 at 56-57.  Failure to reimburse these expenses resulted in a de facto wage deduction from Plaintiffs' first week's wages, which took them below a minimum wage specified by the FLSA.  Doc. # 170 at 2.

The FLSA requires that employers pay a certain minimum wage, plus any expenses the employee incurs for the benefit of the employer.  *Arriaga*, 305 F.3d at 1233 (11th Cir. 2002).  These are not two independent requirements; rather, the minimum hourly wage and the expenses are used to calculate a single FLSA lodestar.  If an employer pays an hourly wage higher than the FLSA minimum, it may not be required to reimburse the employee for expenses at all (i.e., if the resulting pay [actual wage x hours worked] is higher than the FLSA lodestar [(minimum wage x hours worked) + expenses]).  Certain pre-employment expenses -- e.g., travel to the job site, immigration/visa expenses, etc. -- are treated as FLSA-qualified expenses during the first workweek.  Thus, where an employee's pay for the first workweek is less that the FLSA required minimum wage per hour plus qualifying pre-employment expenses, the employer violates the FLSA.

The pre-employment expenses which were not reimbursed are not in dispute; these expenses include:

(1) Visa processing/recruiting fees charged by MOA and CSI.
(2) Six dollar border crossing fee charged at the U.S.-Mexico border.
(3) Cost of Mexican passports that some of the named Plaintiffs were required to purchase in order to obtain an H-2A visa to work for Bland Farms.
(4) The inbound transportation payments for travel from Monterrey, Mexico to the U.S.-Mexico border.

Doc. # 179 at 17.  Before continuing, the Court notes that it limits its analysis to the first category of expenses – the visa processing and recruiting fees charged by MOA and CSI.  Defendants' motion for summary judgment must be denied as to the remaining three categories of expenses because Defendants' argument as to those particular expenses is based on the contention that the expenses "are more than offset by the $50 credit Bland Defendants are due for housing provided to the Plaintiffs, such that the FLSA lodestar formula approved by this Court … would result in no liability under the FLSA."  Doc. # 170 at 7.  The Court cannot address that contention, however, in light of the Court's decision to strike Defendants' expert witness opinion.  *See supra* section III.1.  Thus, the Court is without an expert opinion on the fair rental value of the housing afforded to Plaintiffs while employed by Bland Farms and is unable to complete the FLSA lodestar computation.  As a result, summary judgment is denied as to expenses (2), (3), and (4).  Doc. # 169.

### i.  Processing and Recruiting Fees

Proceeding to the processing and recruiting fees collected by MOA and CSI, Defendants contend that these companies had neither apparent nor actual authority from

11

Bland Farms to charge the fees in question. Doc. # 170 at 7. "In a case involving a federal statute that is silent as to the applicability of agency law, the Supreme Court has stated that the 'apparent authority theory has long been the settled rule in the federal system.'" *Arriaga*, 305 F.3d at 1244-45 (citing *Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982)). The *Arriaga* Court declared that "[n]othing in the FLSA seeks to displace the principles of agency law" and considered the plaintiffs' apparent authority argument. *Id.* at 1245 n.24. "[A]pparent authority is 'created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.'"[13] *Id.* at 1245 (quoting Restatement (Second) of Agency § 27 (1958)).

Here, as was the case in *Arriaga*, there is no evidence that Defendants authorized ILMC, MOA, or CSI to collect processing and recruiting fees. There is also no evidence that Defendants, by word or conduct, said or did anything to cause any H-2A worker to believe that ILMC, MOA, or CSI were authorized to collect such fees. To the contrary, the record in this case overwhelmingly indicates that no apparent authority existed.

From the inception of Bland Farms and ILMC's relationship, Defendants made clear to ILMC that Bland Farms had its own list of recruited workers totaling around 800 names and had a limited need for ILMC's recruitment services. *See* doc. # 167 at 4-5 (Sarah Farrell's affidavit). Sloan Lott and

---

[13] Plaintiffs' contention that Bland Farms is somehow liable for the processing and recruiting fees because the Defendants "did not *prohibit* ... ILMC ... from charging a fee" is contrary to *Arriaga* and wholly without merit. Doc. # 179 at 27 (emphasis added).

Clarke Yearous, both employees of Bland Farms, sought and received assurances that ILMC and its subcontractors would not charge any processing or recruitment fees to the Bland workers. Doc. ## 169-4 at 4 (Sloan Lott's affidavit); 169-9 at 1-2 (Clarke Yearous' affidavit).

Bland Farms' contractual negotiations with ILMC further buttress a finding that Bland Farms did not authorize ILMC, MOA, or CSI to charge processing and recruiting fees. ILMC's standard form "Agency and Indemnity Agreement," a copy of which has been provided by Defendants, reads as follows:

> The ILMC, on behalf of its Clients, will undertake recruitment (including interviewing, hiring and assigning workers), through such policies and procedures, and schedules as it may establish, for the purpose of recruiting the number of supplementary farm laborers from domestic sources and/or temporary agricultural employees from the Republic of Mexico under the H-2A program.

Doc. # 169-5 at 24 (Exhibit one to Therese Bouwense's affidavit). The revised agreement that was actually executed by the parties, however, removed any reference to recruitment in Mexico:

> The ILMC, on behalf of its Client, will undertake the administrative tasks of the domestic recruitment requirements as established by the regulations and guidelines of the United States Department of Labor (limited exclusively to placing advertisements in newspapers and radio, listing the job order with the appropriate State Employment Service Agency, and preparing and filing the necessary recruitment

12

report for the United States Department of Labor), in order for the client to participate in the H-2A program.

*Id.* at 27 (Exhibit two to Therese Bouwense's affidavit). It is thus clear to this Court that ILMC, MOA, and CSI lacked apparent authority to collect recruiting and processing fees from Plaintiffs and other H-2A workers. Plaintiffs, however, contend that Bland Farms was vicariously liable for MOA and CSI's collection of recruiting and processing fees by reason of the "aided in the agency relation rule:"[14]

> The Bland Defendants [are liable] based upon ILMC's alleged misuse of the authority that the Bland Defendants delegated to it under the terms of the Agency and Indemnity Agreement when ILMC authorized MOA and CSI and the field agents of MOA and CSI to take the "tangible employment action" of charging for the visa processing fees....

Doc. # 179 at 31.

The "aided by the agency relation rule" permits a party to impose vicarious liability based on an agent's misuse of *delegated* authority. *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 759 (1998). Bland Farms, however, never delegated authority to ILMC, MOA, or CSI to collect the processing and recruiting fees from Plaintiffs.[15] Because authority was never delegated, there was no authority to abuse, and that distinction alone

---

[14] Plaintiffs' counsel incorrectly refers to this standard as the "agency in relation rule." Doc. # 179 at 31.

[15] Apparent authority, which this Court has already concluded that MOA and CSI did not have, is the relevant standard where the agent purports to exercise a power which it does not have. *Burlington,* 524 U.S. at 759.

renders the "aided by the agency relation rule" inapplicable form the start.

Assuming, *arguendo,* that Bland Farms did delegate authority to the collect processing and recruiting fees, the "aided by the agency relation rule" still requires something more than an agency relationship itself. *See id.* at 760. In *Burlington,* that missing element was a "tangible employment action," which the Supreme Court defined as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761. "In that circumstance, vicarious liability is absolute, without regard to whether the employer knew, or should have known, or approved of the act, or sought to prevent or stop it." *Nye v. Roberts,* 145 Fed.Appx. 1, 4-5 (4th Cir. 2005). Here, contrary to what Plaintiffs' counsel may say, MOA and CSI did not take "tangible employment action" against Plaintiffs because the collection of recruiting and processing fees did not cause a significant change in employment status. Because there was no "tangible employment action," the "aided by the agency relation rule" simply does not work in this case.

Bland Farms did not authorize anyone to collect recruiting or processing fees from H-2A workers in Mexico. Defendants' motion for summary judgment is thus granted as to the processing/recruiting fees collected by MOA and CSI in Plaintiffs' fourth claim for relief. Doc. # 169.

### ii. Joint Employment

Finally, Defendants have moved for summary judgment on Plaintiffs' allegations that Defendants "jointly and severally employed" the Plaintiffs with ILMC, CSI, MOA, and Michael Bell. *See, e.g.,* doc. # 73 at 2, 4, 10 (Third Amended Complaint). If a joint employment relationship exists, all

employers involved can be held liable for violating the FLSA's wage and hour laws. A determination of employment status under the FLSA is a question of law to be decided by this Court. *See Antenor v. D & S Farms*, 88 F.3d 929, 929 (11th Cir. 1996). The *Antenor* Court's discussion on FLSA employment is instructive on this issue:

> In defining "employment" under [the FLSA], Congress expressly rejected the common-law definition of employment, which is based on limiting concepts of control and supervision. Rather, an entity "employs" a person under the FLSA … if it "suffers or permits" the individual to work. An entity "suffers or permits" an individual to work if, as a matter of economic reality, the individual is dependent on the entity.

*Id.* (citations omitted). To determine whether a joint employment relationship exists, the Eleventh Circuit recognizes at least eight factors:

(1) the nature and degree of the alleged employer's control of the farmworkers;

(2) the degree of the alleged employer's supervision, direct or indirect, of the farmworkers' work;

(3) the alleged employer's right, directly or indirectly, to hire, fire, or modify the farmworkers' employment conditions;

(4) the alleged employer's power to determine the workers' pay rates or methods of payment;

(5) the alleged employer's preparation of payroll and payment of the workers' wages;

(6) the alleged employer's ownership of the facilities where the work occurred;

(7) the farmworkers' performance of a line-job integral to the harvesting and production of salable vegetables; and

(8) the alleged employer's relative investment in equipment and facilities.

*Id.* at 932 (citing *Aimable v. Long & Scott Farms, Inc.* 20 F.3d 434, 440-46 (11th Cir. 1994). Here, the factors described by the Eleventh Circuit in *Aimable* all weigh in favor of Bland Farms. There is no evidence that the purported joint employers exercised any degree of supervision over Plaintiffs in the performance of their work at Bland Farms. There is no evidence that ILMC, MOA, or CSI had the right to hire, fire, or modify the Plaintiffs' employment conditions while at Bland Farms. There is likewise no evidence that the purported joint employers ever paid Plaintiffs for their work for Bland Farms. Finally, there is no evidence that ILMC, MOA, or CSI ever owned any of the facilities where Plaintiffs performed work for Defendants or ever invested in facilities where Plaintiffs worked.

Plaintiffs' contention that Bland Farms did not have exclusive control over the daily employment activities of the five Plaintiffs for the first workweek of employment with Bland Farms is unconvincing. Doc. # 179 at 55-59. Any evidence that ILMC, MOA, or CSI shared in the right to modify employment conditions for the first workweek arose during the period of time prior to Plaintiffs' commencement of employment with Defendants.

The Court thus finds that Bland Farms was the sole employer of Plaintiffs in this case and grants Defendants' motion for summary judgment on this issue. Doc. # 169.

### D. Third Claim for Relief – Breach of Contract

As noted earlier, Plaintiffs' third claim for relief is a breach of contract claim, wherein

they allege that Defendants violated the terms of the clearance order, which promised, *inter alia*, compliance with all employment-related law and reimbursement for all inbound transportation expenses and payment of wages on a weekly basis. Doc. # 73 at 55-56. Because this claim is fundamentally the state law equivalent of Plaintiffs' fourth claim for relief (which was partially addressed above, in section IV.C), the Court denies Defendants' motion for summary judgment on this claim. Doc. # 169. The Court's resolution of Plaintiffs' FLSA claim at trial will inevitably address many of the issues intertwined with this contractual claim. At this time, the Court expresses no opinion on whether Plaintiffs can actually recover expenses deemed to have been primarily for the benefit of the employer via a common law contracts claim.

The Court, however, declines Defendants' invitation to reconsider this Court's decision in *Morales-Arcadio v. Shannon Produce Farms*, 2006 WL 140590 (S.D. Ga. 2006), which held that the six-year statute of limitations for simple contracts, provided by O.C.G.A. § 9-3-24, applies to claims alleging violations of the terms of an H-2A clearance order. Defendants here, like the defendants in *Morales-Arcadio*, propose that the more limited two-year statute of limitations for recovery of wages, provided by O.C.G.A. § 9-3-22, is the more suitable limitations period. The Court, however, is still of the opinion that regulations governing the H-2A program expressly state that the job clearance order creates a contract between the employer and employer,[16] invoking the six-year statute of

limitations specified in O.C.G.A. § 9-3-24. Since this Court's decision in *Morales-Arcadio*, three other Georgia district courts have had occasion to consider the same statute of limitations issue. Two of these courts agreed that the six year statute of limitations applies. *See Arriaga-Zacarias v. Lewis Taylor Farms, Inc.*, 452 F.Supp.2d. 1282 (M.D. Ga 2006); *Escolastico De Leon-Granados v. Eller and Sons Trees, Inc.*, 452 F. Supp. 2d 1282 (N.D. Ga. 2006). *But see Antonio-Candelaria v. Gibbs Farms, Inc.* 2008 WL 623611 (M.D. Ga. 2008) (adopting the two-year statute of limitations). Because *Antonio-Candelaria* is not binding on this Court, the Court has no desire to revisit its own well-reasoned decision in *Morales-Arcadio*.

## V. CONCLUSION

Plaintiffs' motion to strike is **GRANTED** in part and **DENIED** in part. Doc. # 176. The Court sustains objections number one, five, seven, and eleven. The remaining objections are overruled. *Id.*

Defendants' motion for summary judgment is likewise **GRANTED** in part and **DENIED** in part. Doc. # 169. Summary judgment is granted in full as to Plaintiffs' first and second claims for relief. Doc. # 73 at 52-55. Partial summary judgment is granted as to Plaintiffs' third claim for relief. *Id.* at 56-57. The Court finds that MOA and CSI lacked any authority from Bland Farms to collect recruiting and processing fees, and Defendants thus have no obligation to reimburse Plaintiffs for those expenses. *See supra* section IV.C.i. The Court also finds that Bland Farms was the sole employer of Plaintiffs. *See supra* section IV.C.ii Summary judgment is denied as to Plaintiffs' fourth claim for relief. Doc. # 73 at 55-56.

---

[16] See 20 C.F.R. § 655.102(b)(14) ("The employer shall provide to the worker, no later than on the day the work commences, a copy of the work contract between the employer and the worker. The work contract shall contain all of the provisions required by paragraphs (a) and (b) of this section. In the absence of a separate, written work contract entered into between the employer and the worker, the required terms of the job

order and application for temporary alien agricultural labor certification shall be the work contract.").

Moving forward, this case is limited solely to the issue of whether Defendants violated the FLSA and the terms of the clearance order by failing to reimburse Plaintiffs for expenses, aside from the recruiting and processing fees, that were allegedly incurred primarily for the benefit of Bland Farms. Counsel should limit any future discovery to this issue alone.


This day of 12 March 2010



B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA