UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

NICOLAS RAMOS-BARRIENTOS, et al.,

Plaintiffs,

v.                    606CV089

DELBERT C. BLAND, et al.,

Defendants.

## ORDER

## I. INTRODUCTION

Before the Court are Defendants' "Memorandum of Authorities Pursuant to Paragraph 18 of the Pre-Trial Order," doc. # 245, and Plaintiffs' "Corrected Memorandum of Authorities as to Issues Likely to Arise at Trial," doc. # 248. In their memoranda, both parties urge the Court to address the remaining issues in this case via summary judgment, obviating the need for trial. Doc. ## 245 at 1; 248 at 2-3; *see also* doc. # 246 ("Joint Consolidated Pretrial Order") ("It may be possible to shorten the trial, or eliminate the need for trial altogether with some judicial guidance in the form of a supplemental summary judgment order...."). The Court will construe Defendants' memorandum as a renewed motion for summary judgment and Plaintiffs' memorandum as a cross-motion for summary judgment. This Order supplements the Court's 3/12/10 Order, doc. # 229, which partially granted Defendants' motion for summary judgment, doc. # 169.

## II. BACKGROUND

The factual and legal background of this case can be found in the earlier Order on Defendants' motion for summary judgment, doc. # 229 at 1-3, so the Court omits that discussion here. Discussion of procedural history, however, is helpful in understanding the issues remaining in this case.

Plaintiffs, who were H-2A employees for Bland Farms, brought this case as a collective action under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") and as a class action under the common law of contracts.[1] Doc. # 73 at 1-2 (Third Amended Complaint).

Plaintiffs' first claim for relief alleged that Defendants violated Georgia's Right to Work Law, O.C.G.A. § 34-6-21 *et seq.*, by barring Plaintiffs and other union members from employment with Bland Farms because of their union status. Doc. # 73 at 52-53. The Court granted Defendants' motion for summary judgment on this claim because the statute did not afford Plaintiffs a private remedy. Doc. # 229 at 8.

Plaintiffs' second claim for relief was largely duplicative of their first. Doc. # 73 at 53-55. The second claim differed from the first only in that it was one for breach of contract premised on Bland Farms' promise in the clearance order to comply with all employment-related laws (which implicitly included Georgia's Right to Work Law). *Id.* The Court granted Defendants' motion for summary judgment on Plaintiffs' second claim for relief because there was no evidence that Bland Farms was involved in barring union members from employment. Doc. # 229 at 9-11.

Plaintiffs' third claim for relief was also a breach of contract claim, wherein they alleged that Defendants violated the terms of the H-2A clearance order, which, *inter alia*, promised (1) compliance with all employment-related laws, (2) reimbursement for all inbound transportation expenses, and (3) payment of wages on a weekly basis for all

---

[1] On 11/17/09, the Court conditionally certified Plaintiffs' case as an FLSA collective action under 29 U.S.C. § 216(b) but denied Plaintiffs' motion for F.R.Civ.P. 23 class certification. Doc. # 209.

of their H-2A employees at a minimum wage rate equal to the "adverse effect wage rate" ("AEWR") published by the U.S. Department of Labor on an annual basis. Doc. # 73 at 55-56. The Court denied Defendants' motion for summary judgment on Plaintiffs' third claim because its viability hinged on Plaintiffs' fourth claim (under the FLSA). *See* doc. # 229 at 15 ("Because [Plaintiffs' third] claim is fundamentally the state law equivalent of Plaintiffs' fourth claim ... resolution of Plaintiffs' FLSA claim ... will inevitably address many of the issues intertwined with [the] contractual claim.").

Plaintiffs' fourth and final claim for relief was brought pursuant to the FLSA's wage and hour provisions. Doc. # 73 at 56-57. Specifically, Plaintiffs argued that Bland Farms failed to reimburse them within the first workweek, or within a reasonable time thereafter, for expenses Plaintiffs incurred that were "primarily for the benefit of the employer" under the analysis adopted by the Eleventh Circuit in *Arriaga v. Florida Pacific Farms*, 305 F.3d 1228 (11th Cir. 2002). Doc. # 73 at 56-67. The Court granted Defendants' motion for summary judgment on this claim as to the collection of processing and recruiting fees, reasoning that Bland Farms never authorized the collection of such fees from H-2A workers in Mexico. Doc. # 229 at 11-13; *see also* doc. # 239 (denying Plaintiffs' motion for reconsideration on same issue). The Court, however, denied Defendants' motion for summary judgment as to Plaintiffs' claim for reimbursement of other pre-employment expenses.[2] Doc. # 229 at 11. Defendants argued that the remaining pre-employment expenses were "more than offset by the $50 credit Bland Defendants [were] due for housing provided to the Plaintiffs, such that the FLSA lodestar formula ... would result in no liability under the FLSA." Doc. # 170 at 7. The Court, however, could not address Defendants' argument because the affidavit of Jack Eugene Gibson, Defendant's real property appraiser, was stricken for purposes of summary judgment. Doc. # 229 at 3. The Court permitted Defendants to enter the affidavit, provided that Plaintiffs were given an opportunity to depose Mr. Gibson. *Id.* Plaintiffs have since waived that opportunity, doc. # 230 at 4, so the issue of whether Plaintiffs are entitled to reimbursement for the remaining pre-employment expenses is ripe for summary adjudication.

### III. RENEWED MOTION FOR SUMMARY JUDGMENT

The Court revisits Plaintiffs' third and fourth claims for relief in the context of summary judgment. Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(c). In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The moving party is "entitled to a judgment as a matter of law" when the nonmoving party fails to make a sufficient showing on an essential element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). The mere

---

[2] These other expenses included (1) a six dollar border crossing fee charged at the U.S.-Mexico border, (2) the cost of Mexican passports that some of the named Plaintiffs were required to purchase in order to obtain an H-2A visa to work for Bland Farms, and (3) the inbound transportation payments for travel from Monterrey, Mexico. Doc. # 229 at 11.

2

existence of a scintilla of evidence is insufficient; rather, there must be evidence upon which reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The success of Defendants' supplemental motion for summary judgment hinges on whether they are entitled to certain "wage credits" that offset reimbursable pre-employment expenses incurred by Plaintiffs primarily for the benefit of Bland Farms (i.e., *Arriaga* expenses). Wages paid to an employee include "reasonable cost ... to the employer of furnishing such employee with board, lodging, or other facilities,[3] if such board, lodging, or other facilities are *customarily furnished* by such employer to his employees...." 29 U.S.C. § 203(m) (emphasis added). Board, lodging, or other facilities are "customarily furnished" when provided "regularly by the employer to his employees or if the same or similar facilities are customarily furnished by other employees engaged in the same or similar trade, business, or occupation in the same or similar communities." 29 C.F.R. § 531.31 "Facilities furnished in violation of any Federal, State, or local law, ordinance or prohibition [are] not ... considered facilities 'customarily' furnished." *Id.*

Defendants contend that they are entitled to wage credits for (1) the reasonable cost of housing afforded to Plaintiffs and other H-2A employees while employed by Bland Farms, and (2) the amount of "daily subsistence payments" made to Plaintiffs and other H-2A employees while en route from Mexico to Bland Farms. Doc. # 245 at 2-6, 8-10.

### A. Wage Credit for Housing

Plaintiffs argue that Defendants "are not entitled to any wage credit under 29 U.S.C. § 203(m) against any ... unreimbursed pre-employment expenses as the migrant housing that they provided to each of the [P]laintiffs ... was provided free of charge as required by 20 C.F.R. § 655.202(b)(1) and the terms of [Defendants'] clearance order job contract with [Plaintiffs]." Doc. # 248 at 10. The Court disagrees. Although the Court acknowledges the dearth of case law addressing this particular issue, none of the authorities cited by Plaintiff stand for the proposition that employers are prohibited from taking a wage credit for the reasonable cost of housing provided to employees, where that housing is to be provided free of charge pursuant to federal regulations. *See, e.g., Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696 (E.D.N.C. 2009); *Osias v. Marc*, 700 F. Supp. 842 (D. Md. 1988); *Marshall v. Glassboro Serv. Ass'n, Inc.*, 1979 WL 1989 (D.N.J. 10/19/79).

The plaintiffs in *Garcia* argued that the defendants were "not entitled to claim the costs of any housing provided to [p]laintiffs toward the minimum wage requirements under the FLSA because the housing was furnished in violation of the [North Carolina Migrant Housing Act]." 644 F. Supp. 2d at 710. North Carolina law requires migrant housing to be inspected for compliance with federal and state law prior to occupancy. *See id.* The *Garcia* court held that the defendants were not entitled to a § 203(m) wage credit after they admitted that they had committed a technical violation of North Carolina law by failing to register the workers' housing with the state and by not having the housing inspected prior to the plaintiffs' occupancy.[4] *Id.* at 710-11.

---

[3] The regulations define "other facilities" as "something like board or lodging." 29 C.F.R. § 531.32(a).

[4] Quite contrary to Plaintiffs' arguments here, the *Garcia* court recognized that "[i]f housing is 'customarily furnished' by the H-2B employer as a part

3

In *Osias*, the employer was likewise "not entitled to a credit for housing he provided ... [b]ecause the Department of Labor's investigative report found the housing to be seriously substandard." 700 F. Supp. at 845

The *Garcia* and *Osias* cases are distinguishable. The defendants in those cases were denied a § 203(m) wage credit because they provided housing in violation of federal or state law. Here, there is no allegation that the housing itself was somehow substandard or that Defendants were otherwise unauthorized to provide housing to their employees. Plaintiffs argue "the allowance of any wage credit for ... housing would effectively allow the [Defendants] to obtain a wage credit for housing that was provided in violation of federal law." Doc. # 248 at 10. Plaintiffs' argument is essentially that Defendants will run afoul of H-2A regulations if they are permitted to take a § 203(m) wage credit for the reasonable cost of housing that is otherwise afforded to H-2A employees free of charge. This argument, however, convolutes the distinct requirements that employers must adhere to under the FLSA and under the Department of Labor's H-2A program. While H-2A regulations require employers to provide "housing without charge" to the H-2A employees, 20 C.F.R. § 655.202(b)(1), the FLSA has no such requirement and indeed permits employers to include in wages paid the reasonable cost[5] of "customarily

---

of wages, then the cost to the employer of furnishing an employee with housing can be included in determining the employer's compliance with the minimum wage requirement promulgated under the FLSA." 644 F. Supp. 2d at 710.

[5] "[T]he 'reasonable cost' to the employer of furnishing the employee with board, lodging, or other facilities (including housing) is the cost of operation and maintenance.... [I]f the total so computed is more than the fair rental ..., the fair rental value ... shall be the reasonable cost." 29 C.F.R. § 531.3.

furnished" board, lodging, or other facilities. *See* 29 U.S.C. § 203(m). Defendants complied with H-2A regulations when they provided free housing to Plaintiffs and other H-2A employees. Defendants do not violate those regulations by taking a § 203(m) wage credit for the reasonable cost of housing provided to their employees, something that the FLSA permits them to do.

The *Marshall* case, meanwhile, differs from *Garcia* and *Osias* in that the defendant in *Marshall* was precluded from taking a § 203(m) credit because a collective-bargaining agreement required the defendant to provide lodging at no cost to the worker. 1979 WL 1989, at *3. The court reasoned that "[t]o allow the employer a wage credit for facilities excluded from wages ... is to result in the employee receiving less than the minimum wage." *Id.* The wage credit "would necessarily violate the terms of [§ 203(m)] which forbids the inclusion as part of the minimum wage paid to any employee, the cost of board, lodging or other facilities which have been ... excluded from wages under the terms of a *collective[-]bargaining agreement.*" *Id.* (emphasis added).

Plaintiffs contend that "[t]he fact that the contract in *Marshall* consisted of a collective-bargaining agreement is of no legal significance," and permitting Defendants to take a wage credit would "constitute a breach of [Defendants'] contractual agreement to provide that housing free of charge." Doc. # 248 at 11. The Court disagrees. The fact that *Marshall* involved a collective-bargaining agreement is of paramount importance and distinguishes that case from the one here. This is because § 203(m) provides that "the cost of board, lodging, or other facilities shall not be included as a part of the wage paid to any employee to the extent it is excluded therefrom under the terms of a bona fide *collective-bargaining agreement* applicable to

4

the particular employee...." 29 U.S.C. § 203(m) (emphasis added). Plaintiffs invite the Court to read an additional exclusion into § 203(m) for contractual provisions wherein an employer agrees to provide housing without charge, but the textual canon of *expressio unius est exclusio alterius* persuades the Court to refrain from doing so. *See Fla. Right to Life, Inc. v. Lamar*, 273 F.3d 1318, 1327 (11th Cir. 2001) (recognizing the interpretive canon of *expressio unius est exclusio alterius*, which provides that "the expression of one thing implies the exclusion of another"). Had Congress intended the result propounded by Plaintiffs, it would not have limited the exclusion to housing and facilities made available via a collective-bargaining agreement. Defendants, therefore, are not in breach of the underlying employment contract (i.e., the H-2A clearance order) by taking the § 203(m) wage credit provided to them by the FLSA.

Because housing is "customarily furnished" and indeed required by H-2A regulations, Defendants are entitled to a § 203(m) wage credit for the reasonable cost of housing provided to Plaintiffs and other H-2A employees. Because Plaintiffs do not dispute the valuation proffered by Mr. Gibson, Defendants are entitled to a § 203(m) wage credit for housing in the amount of $50 for the first week of employment. *See* doc. # 189-1 (Affidavit of Jack Eugene Gibson).

### B. Wage Credit for "Daily Subsistence Payments"

Defendants reimbursed their workers a regulatorily mandated sum for meals ("daily subsistence payments") while the employees were en route from Mexico to Bland Farms. Doc. # 245 at 8 (citing 20 C.F.R. §§ 655.122(h); 655.173). Defendants mistakenly included this subsistence reimbursement as a reimbursable pre-employment expense in their FLSA Lodestar calculation. Doc. # 245 at 8.

Defendants now contend that "subsistence payments, given for meals in transit, and properly reimbursable under the terms of the H-2A contract, are not reimbursable as an expense incurred primarily for the benefit of the employer under the FLSA" (i.e., they are not *Arriaga* expenses). Doc. # 245 at 9. The Court agrees. *See* 29 C.F.R. § 531.32(c) ("[M]eals are always regarded as primarily for the benefit and convenience of the employee."); *see also Arriaga*, 305 F.3d at 1243 n.20 (same).

Because H-2A regulations required Defendants to provide meals to Plaintiffs and other H-2A employees while en route from Mexico, such meals were "customarily furnished" in the FLSA context. The fact that H-2A regulations required Defendants to make subsistence payments to H-2A employees free of cost does not preclude them from taking the § 203(m) wage credit. *See supra* section III.A. Defendants are thus entitled to a § 203(m) wage credit (ranging in amount from $21.95 to $22.70) for the subsistence payments provided to Plaintiffs and other H-2A employees.

### C. FLSA Lodestar Calculation

As noted in the Order partially granting Defendants' motion for summary judgment, the FLSA requires employers to pay a certain minimum wage, plus any expenses the employee incurs for the benefit of the employer. Doc. # 229 at 11 (citing *Arriaga*, 305 F.3d at 1233). If an employer pays an hourly wage higher than the FLSA minimum, it may not be required to reimburse the employee for expenses at all (i.e., if the resulting pay [(actual wage x hours worked) + § 203(m) wage credits] is higher than the FLSA lodestar [(minimum wage x hours worked) + expenses]). *Id.* That appears to be the case here.

5

The Court has reviewed Defendants' corrected Lodestar calculation for the first work week of the relevant planting and harvest seasons and finds it to be accurate.[6] Doc. # 245 at 11. For each Plaintiff and opt-in Plaintiff, the resulting pay exceeds the FLSA lodestar, meaning Defendants have not violated the FLSA. Because Defendants have complied with the FLSA, they could not have breached the terms of the H-2A Clearance Order, which required compliance with all employment-related laws. Summary judgment is hence appropriate as to Plaintiffs' third and fourth claims for relief, and Defendants' 4/7/09 motion for summary judgment is *GRANTED* in its entirety. Doc. # 169. Judgment is accordingly entered in favor of Defendants, and this case is now *CLOSED*.

This day of 21 June 2010

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[6] Plaintiffs dispute the amount of pre-employment expenses used in Defendants' FLSA Lodestar calculation. Plaintiffs contend that Defendants omit expenses for (1) the $10 lodging expense paid in Monterrey, Mexico for visa interviews and processing and (2) the full cost of passports. Doc. # 248 at 13-14. First, as to the lodging expense, Plaintiffs first made their claim for lodging in Monterrey on 6/5/10. Doc. # 245. Plaintiffs' claim is unduly delayed and prejudicial to Defendants if considered, so the Court will not allow it. Second, as to the correct amount for passport expenses, Defendants have included "a per season passport charge of $17.50." *Id.* at 10. The Court finds this amount to be more than reasonable in light of the Department of Labor's bulletin that passport fees are non-reimbursable expenses incurred primarily for the benefit of the employee. U.S. Dept. of Labor, Field Assistance Bulletin No. 2009-2, at 12 (8/21/09) ("[O]btaining a passport and incurring any related costs are for the primary benefit of the employee as the employee may use the passport for purposes other than employment.").

6